TRINA A. HIGGINS, United States Attorney (#7349)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15409)
MELINA SHIRALDI, Assistant United States Attorney (# 13110)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)524-5682

_____

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINT WADE<br>DONNA WADE<br>STEVEN WILLING &<br>JORDAN WILLING<br><br>Defendants. | **UNITED STATES' POSITION REGARDING DETENTION**<br><br><br>Case No. 4:23-cr-00077<br><br>Judge David O. Nuffer |

☒ The United States is not seeking detention because, while we believe the defendant poses a risk of nonappearance, the United States believes that risk can be mitigated by imposing extensive pretrial release conditions:

☒ Pursuant to 18 U.S.C. § 3142(f)(2) because the case involves:

  ☒ **(A)** a serious risk the defendant will flee; **or**
  ☐ **(B)** a serious risk the defendant will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, attempt to threaten, injure or intimidate a prospective witness or juror.

**Procedure**

The defendant may seek a continuance of the detention hearing of up to five days, and the United States may seek a continuance of up to three days. 18 U.S.C. § 3142(f). During any such continuance, the defendant shall be detained. *Id*. The rules concerning the admissibility of evidence do not apply at the detention hearing. *Id*. The United States has the burden of persuasion by clear and convincing evidence that no condition or combination of conditions of release will reasonably the safety of any other person and the community or by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. *Id*.; *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

## Rebuttable Presumption

There is no rebuttable presumption of detention in this case.

## Factors to Be Considered

The United States may present arguments, proffer evidence, or provide testimony at the scheduled detention hearing supporting the detention of the defendant including, but not limited to:

- ☐ The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm or destructive device. (18 U.S.C. § 3142(g)(1)).
- ☒ The weight of evidence against the defendant. (18 U.S.C. § 3142(g)(2)). **(See Below)**
- ☐ The history and characteristics of the defendant including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning court proceedings. (18 U.S.C. § 3142(g)(3)(A)).
- ☐ Whether, at time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law. (18 U.S.C. § 3142(g)(3)(B)).
- ☐ The nature and seriousness of danger to any person or to the community that would be posed by the defendant's release. (18 U.S.C. § 3142(g)(4)).
- ☐ The defendant's lack of legal status in the United States. The defendant's legal status is:
- ☐ How the defendant would be subject to removal or deportation after serving a period of incarceration.

☒ The defendant's significant family or other ties outside of the United States. **(See Below)**
☐ The defendant's use of aliases or false documents.
☐ The defendant's prior attempts to evade law enforcement.
☐ How the defendant's proposed residence, employment, or proposed treatment programs have not been verified.
☐ The defendant's prior failures to appear for court proceedings.
☒ Other reasons including: **(See Below)**

VINT WADE, DONNA WADE, STEVEN WILLING, & JORDAN WILLING are all charged with participating in a conspiracy where the WADEs paid third parties to remove paleontological resources from public land. The WADEs then sold those paleontological resources to the WILLINGs. The WILLINGs exported the paleontological resources to China, where they were made into consumer goods for profit. These sales violated both 16 U.S.C. § 470aaa-5 (Paleontological Resources Preservation Act ("PRPA")) and 18 U.S.C. § 641 (Receipt of property stolen from the United States).

PRPA forbids a person to "exchange, transport, export, receive, or offer to exchange, transport, export, or receive any paleontological resource if the person knew or should have known such resource to have been excavated or removed from Federal land…" PRPA also prohibits a person from "sell or purchase or offer to sell or purchase any paleontological resource if the person knew or should have known such resource to have been excavated, removed, sold, purchased, exchanged, transported, or received from Federal land." Finally, PRPA also prohibits a person to "make or submit any false record, account, or label for, or any false identification of, any paleontological resource excavated or removed from Federal land."

The parties, acting in concert, then mislabeled these shipments and deflated the value of the shipments in order to avoid detection by federal agents.

As noted in the indictment, evidence indicates that the parties have been involved in this conspiracy since 2018. Paleontological resources are finite resources that have commercial and scientific value. These resources largely lose their scientific value once they are removed from the primary location in the ground. This conspiracy has resulted in at least $3,000,000 in loss under the Paleontological Resources Preservation Act. The true loss of these resources cannot be monetarily measured.

The weight of the evidence against the defendants is strong. A portion of the evidence is documented below:

## The Sale of the WADES' Dinosaur Bone Inventory (Counts 1, 3)

On June 15, 2021, the WADEs and S. WILLING entered into an agreement where the WADEs sold and S. WILLING purchased 28,000 pounds of dinosaur bone including cabs, jewelry, knives, beads, and carvings, as well as a list of buyers and contact information for purchasers of 2 dinosaur spheres for $1,437,000.



The purchase and sale agreement is shown above. The sale included jewelry made from dinosaur bones. (See below).





The sale also included the sales contact list for this carved dinosaur sphere which the parties were attempting to sell for $26,000. (See below)



And it included carvings made from dinosaur bones like this one:



This carving was listed for individual sale for $48,000.

**The WADEs and the WILLINGs Worked Together to Export Dinosaur Bones to China and Mislabeled the Contents of the Shipment. (Counts 4, 5, 6, 8, 9, 10)**

The parties worked together to export paleontological resources to China and mislabeled the same to avoid detection. Federal Agents interrupted the shipping of these bones to China. On December 8, 2022, Federal Agents seized 17,354 pounds of dinosaur bones from the Long Beach California port.

The shipment was mislabeled as industrial stone and its value was drastically underreported. Under penalty of perjury, D. WADE declared that the shipment contained "Agate Jasper Stone" instead of dinosaur bones.

The containers were packaged to avoid detection, but once opened, contained paleontological resources. Paleontologists were on site at the execution of the search warrant and identified these containers to contain dinosaur bones. (See below).



The parties also mislabeled the contents of the shipment. The correspondence among the parties identified the containers as containing "Dino Bone" and list the price paid as $73,000, which can be confirmed by bank records.

```
WADES WOOD & Rocks            OCT 10th 2022

5 Containers Dinosaur Bone  3600 lbs X 5=18,000lbsX4.00=$72000
5 Containers @ $ 100.00                            = 500.00
5 Containers @$100.00 for Agate                    = 500.00
                                      Total Due =$73,000
```

But the official invoice identifies "Industrial Stone" and "Moss Agate" and identify the cost of the shipment as $8,491.08.

**Donna Wade**

Wade's Rocks  
3090 S. Desert Rd  
Moab, UT 84532  
Phone 435-260-2032

DATE: November 8, 2022  
INVOICE #: WR22-01

Consignee:  
North Star (Xiamen) Technology Co., Ltd.  
1813-1 MinAn Road  
Torch Hi-Tech Park (XiangAn) Industry zone, Xiamen  
Post code:361006  
Cindy Zhang  
cindyzhang@northstarxm.com  
Mobile:13850084791

Notify Party:  
Sunrise (Tianjin) International Trading Co, Ltd  
Room 315, Hanjing Huili Building  
The second street, TEDA  
Tianjin, China  
Nancy Wang  
nancy.wang@tjsunrisetrade.com  
Mobile: 0086 188 2269 3535

| DESCRIPTION | Qty | Cost | Ext-Cost |
|---|---|---|---|
| 5 Bin Industrial Stone @ 1,632.9 kgs each | 8,165 | $0.56 | $4,572.12 |
| 5 Bin Moss Agate @ 1,632.9 kgs each | 8,165 | $0.48 | $3,918.96 |
| HS code 25169000 | | | |
| BL # RICCNJ222600 | | | |
| Container # BMOU2854280 | | | |
| Seal #28067984 | | | |
| **TOTAL** | **16,329 Kgs** | | **$8,491.08** |

Further, when required to complete a supplemental Shipper's Export Declaration form, D. WADE declared under penalty of perjury that the shipment contained "Agate Jasper Stone."



**U.S. Customs and Border Protection**

Export Information- Shipper's Export Declaration supplemental information form:

Principal (exporter)/Company Name: Wade's Wood & Rocks  
Principal (exporter) name: Donna Wade  
Address: 3090 S. Desert Rd, Moab, UT, 84532  
Email address: wadesrocks@yahoo.com   Phone: 435-260-2032  
Shipping carrier/Consignee: Trans Ocean Intl/North Star (Xiamen) Technology Co., Ltd.  
Material classification or name: Agate Jasper Stone

Please describe in detail the commodity to be exported:  
Selling Agate Jasper Stone to China, for their use.



**U.S. Customs and Border Protection**

Please provide additional information regarding the export commodity: (i.e. licenses, mitigation measures used in shipping, where the materials were obtained, destination country letter of acceptance- attach additional sheets if necessary)

Obtained in collections and auctions in Southeastern Utah.

18 U.S.C. 1001 States – Whoever in the matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than five years, or both.

I have read this statement consisting of _2_ pages. I fully understand this statement and declare that the foregoing is true, accurate, and complete to the best of my knowledge. I have signed or initialed each and every page and have been given the opportunity and to make any corrections or additions.

I made this statement freely and voluntarily, without threats or rewards, or promises of reward having been made to me in return for it.

_Donna Wade_     12/07/2022
Signature of principal exporter     Date

**Note:** Title 18, United States Code, Section 1001 makes it a crime to: 1) knowingly and willfully; 2) make any materially false, fictitious or fraudulent statement or representation; 3) in any matter within the jurisdiction of the executive, legislative or judicial branch of the United States.

### **These Dinosaur Bones Were Removed from Federal Land**

PRPA prohibits the sell and purchase of paleontological resources that the defendant knew or should have known came from Federal land. The United States has used two scientific techniques XRF and REE to determine that these dinosaur bones came from Federal land.

The elemental composition of a rock or fossil can be measured with x-ray fluorescence (XRF). Rocks and fossils are composed of minerals, and minerals are composed of chemical elements. Some minerals are original to a rock or fossil. Other minerals are left behind by water that permeated the rocks in the eons since they were originally formed. These minerals differ by location and geological history. These "post-depositional" elements are common to both the rocks and the fossils in a particular location because

9

both were bathed in the same groundwaters and experienced the same geological history. Morrison Formation is a geological formation where dinosaur bone is present. Elemental fingerprints can be used to compare seized fossils to sites where they originated (and were subsequently removed). Paleontologists can compare seized dinosaur bones, compare them to control samples of known public and private quarries and determine from where the bones had been removed from the earth. Scientists can also undertake a similar process using REE or rare earth elements.

The United States has completed its XRF analysis and is still undergoing its REE analysis but the results show with statistical accuracy that the vast majority of these dinosaur bones were removed from Federal land in violation of PRPA.



This image above shows a scientist taking an XRF sample of this dinosaur bone to determine the location that the bone had been removed.



Agents and scientists then labeled each sample with a unique identifier and placed a circle on the bone where the XRF was sampled. The XRF analysis confirms the bone was removed from federal land. Note that this one fossil is priced at $4,500. (Photo above).



As part of this case, the United States tested over 1,000 dinosaur bones samples seized in this operation to prove the provenience of these bones to Federal land. The piece identified above was seized from the WADE residence during the execution of a search warrant. The photo of the bones identified below was taken during the United States' testing of these samples.



# Victim Notification

☒ This matter does not involve a victim requiring notification.

Because of the risk that the defendants will flee, the danger to the community should they continue to engage in dinosaur bone sales, and because financial crimes were also charged in this indictment, the United States seeks the following pretrial conditions to be imposed in order for the defendants to continue out of custody until trial can occur.

Based on the nature and circumstances of the offenses, the United States requests the following conditions of release:
  (a) The defendants shall not buy, sell, receive, exchange, or trade any paleontological resources.
  (b) Avoid contact with any collectors, dealers, wholesalers, and distributors of paleontological resources, including former clients.
  (c) The defendants shall not frequent gem stores, trade shows, flea markets, or places where paleontological resources are located, traded, or sold.
  (d) Maintain or actively seek verifiable employment that does not involve paleontological resources.

Justification (a) – (d): These restrictions that the defendant's employment not involve paleontological resources is reasonably necessary to protect the public and diminish the risk of future illegal conduct. The nature of the conduct charges is related to defendant's employment. The defendants owns at least one business that buys and sells paleontological resources and absent this restriction, the defendants may continue to engage in the trafficking of unlawfully obtained paleontological resources.

  (e) Surrender any passport to the United States Clerk of the Court, District of Utah.
  (f) Not obtain or apply for passport.
  (g) Abide by the following restrictions on his/her personal associations, place of abode, or travel:
     i. Maintain residence and do not change without prior permission from the pretrial officer.
     ii. Do not travel outside their home state of residence without prior permission from the pretrial officer.
     iii. Do not travel outside the United States without prior permission from the Court.
  (h) Do not import or export goods to or from China without permission from the Court.

Justification (e) – (h): The conduct related to the offenses charged deal with making false statements, false labeling, false export information, false declaration, and attempted smuggling of goods from the United States to China. These restrictions will help reasonably assure appearance at trial.

(i) Not incur new credit charges or open additional lines of credit without prior permission from the pretrial officer.
(j) Submit list of all financial accounts to pretrial officer.

Justification (i) – (j): The nature of the conduct is related to the unlawfully obtained paleontological resources that the defendants used for their commercial gain. As a result of the conduct charged, if convicted the defendants will be paying damages and perhaps a fine, therefore, the financial assets of the defendants should be protected.

(k) Report on a regular basis to the pretrial officer as directed. Immediately report to the pretrial office any contact with law enforcement personnel, including arrests, questioning, or traffic stops.
(l) Not possess a firearm, ammunition, destructive device, or other dangerous weapon.
(m) Submit person, residence, office, or vehicle to search, conducted by the pretrial officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release, failure to submit to a search may be grounds for revocation; the defendants will warn any other residents that the premises may be subject to searches pursuant to this condition.

Justification (k) – (m): These conditions are recommended to promote public safety. These conditions will permit an officer to intervene quickly if there is reasonable suspicion that any of the defendants has engaged in criminal conduct or otherwise violated a condition of release.

Respectfully submitted.

DATED this 12th day of October, 2023.

*/s/Ruth Hackford-Peer*_____
RUTH HACKFORD-PEER
Assistant United States Attorney