TRINA A. HIGGINS, United States Attorney (#7349)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15409)
MELINA SHIRALDI, Assistant United States Attorney (#13110)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)524-5682

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. VINT WADE, DONNA WADE, STEVEN WILLING, and JORDAN WILLING, Defendants. | **UNITED STATES' OPPOSITION TO JORDAN WILLING'S MOTION TO SEVER** <br><br> Case No. 4:23-cr-00077-DN-DAO <br><br> District Judge David Nuffer |

Jordan Willing, with the help of his father Steven Willing and two Utah residents, Vint and Donna Wade, operated a large illegal dinosaur bone trafficking operation. Over 65,000 pounds of dinosaur bones have been seized and damages are now estimated to be about ten million dollars.

The United States objects to Defendant Jordan Willing's Motion to Sever.[1] Jordan Willing makes an insufficient showing to overcome the established preference for joint trials on the same facts for the same acts.[2] Under this clearly established law, Jordan

---

[1] Motion to Sever, docket no. 100, filed March 8, 2024.

[2] *See United States v. Mower*, 351 F.Supp.2d 1225, 1231 (10th Cir. 2005) ("The Tenth Circuit follows the general rule that individuals charged together should be tried together. A defendant wishing to obtain severance must show actual prejudice at trial will result from failure to sever the trials. Moreover, in a conspiracy trial where the evidence

Willing cannot make the requisite demonstration that he will suffer actual prejudice if he and his co-defendants, primarily Steven Willing, are tried together.

## STATEMENT OF RELEVANT FACTS

At all relevant times charged in the Indictment,[3] Vint and Donna Wade owned a company, Wade's Wood & Rocks. The Wades paid individuals for paleontological resources that those individuals had taken from federal land. Sometimes, Vint Wade would specifically instruct people as to where on federal land they should go to find and remove paleontological resources. After acquiring these paleontological resources, the Wades then re-sold the resources through their business to others, including Jordan and Steven Willing. Over the course of five years, the Wades sold over $1,000,000 in paleontological resources taken from federal land to the Willings.

During the same period of time, Jordan Willing was the CEO and Steven Willing was a registered agent of JMW Sales, Inc. ("JMW"). Steven Willing, on his own and through JMW, purchased vast amounts of paleontological resources from the Wades. Jordan Willing, through JMW, did the same. The Wades and Willings would then ship or attempt to ship the same paleontological resources to China, all while mislabeling and undervaluing the materials in an effort to conceal their true nature from various government officials.

Multiple interviews were conducted during the course of the investigation, including with employees of JMW. Between March 21 and March 27, 2023, Steven

---

overlaps and the offenses arise from the same series of acts or transactions, joinder is favored.") (citations omitted).
[3] Indictment, docket no. 1, filed September 27, 2023.

Willing was also contacted and interviewed by investigating officers on four separate occasions. Throughout those interviews, Steven Willing acknowledged that he had obtained paleontological resources from the Wades and that JMW, of which he is a registered agent, exclusively obtained paleontological resources from the Wades.

## LEGAL STANDARDS

"There is a preference in the federal system for joint trials of defendants who are indicted together."[4] "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources."[5] Only, "[i]f the joinder of defendants in an indictment for trial appears to prejudice a defendant or the government, the court may order separate trials."[6]

The preference for joined trials is heightened still further when there is a charge of conspiracy. The Tenth Circuit has recognized that "in a conspiracy trial it is preferred that persons charged together be tried together."[7]

In order to prove that severance of defendants is required, "a defendant must show more than 'that separate trial may have afforded a better chance of acquittal'; rather, the

---

[4] *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

[5] *United States v. Garcia*, 74 F.4th 1073, 1110 (10th Cir. 2023) (citation omitted).

[6] *United States v. Adegboruwa*, No. 2:19-cr-00260-JNP-CMR, 2023 WL 5724934, at *2 (D. Utah Sept. 5, 2023) (citing *Garcia*, 74 F.4th at 1110).

[7] *United States v. Scott*, 37 F.3d 1564, 1576 (10th Cir. 1994); see also *United States v. Hack*, 782 F.2d 862, 871 (10th Cir. 1986) ("The general rule in conspiracy cases is that where proof of the charges against defendants is dependent upon the same acts and evidence, persons who are indicted together should also be tried together.").

defendant 'must show the right to a fair trial is threatened or actually impaired.'"[8] To prove that severance is required to protect the right to a fair trial, a defendant must show "actual prejudice outweighing the expense and inconvenience of separate trials."[9]

In *Bruton v. United States*, 391 U.S. 123, 124 (1968), the trial court admitted into evidence a statement from one defendant, Evans, that implicated both Evans and Bruton in the alleged offense. Even though the court instructed the jury to only consider the statement in determining Evans' guilt, the Supreme Court found that the statement violated Bruton's rights under the Confrontation Clause.[10] The *Bruton* Court held that it was a violation because Bruton did not have the opportunity to confront the witness and the court's limiting instruction did little to remedy risk of prejudice by the jury.[11]

By its very terms, *Bruton* applies only to *confessions* by one co-defendant that *implicate* the other co-defendant.[12] The Supreme Court and Tenth Circuit have held that statements that only "inferentially incriminate" a defendant are admissible without running afoul of *Bruton*.[13] *Bruton* is also not violated when the statement does not refer to another individual at all, even when the statement combined with other evidence may incriminate the other individual.[14] Finally, *Bruton* does not apply to nontestimonial

---

[8] United States v. Adegboruwa, 2023 WL 5724934, at *2, (quoting *Garcia*, 74 F.4th at 1110).

[9] *Garcia*, 74 F.4th at 1110 (citation omitted).

[10] *Id*. at 132-33.

[11] *Id*.

[12] See *Samia v. United States*, 599 U.S. 635, 653 (2023) ("[T]he *Bruton* rule applies only to 'directly accusatory' incriminating statements, as distinct from those that do 'not refer directly to the defendant'").

[13] See *id.*; *United States v. Sarracino*, 340 F.3d 1148, 1160 (10th Cir. 2003) (holding that "the *Bruton* rule does not apply to 'statements that are not directly inculpatory but only inferentially incriminating'") (quoting *United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir. 2000)).

[14] *United States v. Powell*, 732 F.3d 361, 376–379 (5th Cir. 2013).

statements.[15]

The mere presence of a *Bruton* issue in a case does not entitle a defendant to a separate trial.[16] The defendant still must meet their evidentiary burden of showing prejudice.[17] *Bruton* problems can often be avoided by a limiting instruction when the statement is redacted to remove references to the other defendants.[18] This is done with blanks, neutral pronouns, etc.[19] If the redacted confession still gives too many details that help to identify and incriminate the defendant, only then is the *Bruton* rule violated.[20] Another measure short of severance that is occasionally employed to reduce the likelihood of prejudice is to have separate juries in the same courtroom, hearing the evidence appropriately admitted as to a particular defendant.[21] This procedure allows the prosecution to present its case against codefendants simultaneously while affording the defendants the advantage of having their cases evaluated independently by different triers of fact.[22]

---

[15] *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013); *see also United States v. Yurok*, 925 F.3d 423, 437 (10th Cir. 2019) (holding that statements made in furtherance of a conspiracy are nontestimonial and are admissible under the Confrontation Clause even when the defendants cannot confront the declarants) (citing *United States v. Patterson*, 713 F.3d 1237, 1247 (10th Cir. 2013).

[16] *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990).

[17] *United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir. 1992).

[18] *Richardson v. Marsh*, 481 U.S. 200 (1987).

[19] *See United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999).

[20] *Gray v. Maryland,* 523 U.S. 185 (1998).

[21] *See United States v. McVeigh*, 169 F.R.D. 362, 371 (D. Colo. 1996) ("The possibility of a joint trial with separate juries has been considered. Conceptually, that is a convenient solution. Logistically, it is impracticable."); *see also, Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008 (1992); *People v. Ricardo B*., 73 N.Y.2d 228, 538 N.Y.S.2d 796, 535 N.E.2d 1336 (1989) (approving dual juries in exceptional cases).

[22] *See United States v. Rimar*, 558 F.2d 1271 (6th Cir. 1977); *accord United States v. Lewis*, 716 F.2d 16, 72 A.L.R. Fed. 863 (D.C. Cir. 1983).

# ARGUMENT

## I. Defendant fails to carry his heavy burden of showing real prejudice warranting severance.

In an attempt to meet his "heavy burden," Jordan Willing posits two reasons for his motion to sever: first, Jordan Willing seeks a severance to move forward with a trial on July 8, 2024; and second, he claims he will be unduly prejudiced by the admission of statements of co-defendant Steven Willing in the context of a joint trial.[23] The Court has noted it plans to continue the jury trial as to all defendants and make speedy trial act findings, so the United States does not address the first argument.[24] As to the second, there are measures short of severance that the Court can implement to protect codefendants from prejudice without burdening the parties, witnesses, court, and government with serial trials.

The Motion to Sever identifies two types of statements that it supposes the United States intends to admit at trial.[25] The specific statements Jordan Willing asserts violate *Bruton* are: 1) Vint Wade's discussion with and direction of an unindicted coconspirator as to where on federal land the paleontological resources came from; 2) Steven Willing's statement to investigators that he, Jordan Willing, and the Wades do not label shipments of paleontological resources as dinosaur bones because the material is agate; 3) Steven

---

[23] Motion to Sever at 12.

[24] Order, docket no. 103, March 11, 2024. The United States notes that the only legal authority Jordan Willing appears to present to support this basis to sever holds that "reasonable" delays relating to one defendant may be excludable as to other defendants (*see* Motion to Sever n. 32), and his proposed modified trial schedule fails to account for crucial deadlines, such as a deadline for defense expert disclosures.

[25] Motion to Sever at 13–14.

Willing's statement to an investigator that the Wades may have acquired the paleontological resources from federal land prior to the passage of PRPA; 4) Steven Willing's statement to an investigator that JMW/Jordan Willing had been doing business with the Wades for approximately 15 years; and 5) Steven Willing's statement to an investigator that JMW gets all their dinosaur bone from the Wades.

However, Jordan Willing provides no explanation as to how any of these statements facially incriminate him. Further, Jordan Willing provides no argument as to why alternative remedies are insufficient and severance must be granted. Jordan Willing's identification of statements that *may* provide a "link in the chain" of evidence against him is insufficient to carry his heavy burden to show that severance is warranted.

**II.     Vint Wade's statements to coconspirators do not implicate *Bruton*.**

Vint Wade's statements to coconspirators were made in furtherance of the conspiracy, are not testimonial, and do not implicate any codefendants. Therefore, these statements do not trigger the *Bruton* rule.

During the course of the conspiracy, Vint Wade discussed locations that coconspirator 1 had collected dinosaur bones and instructed coconspirator 1 as to where on federal land they should go to look for dinosaur bones. These statements are nontestimonial. They were made in furtherance of the conspiracy. Further, the statements do not implicate Jordan Willing or any other charged defendant in this case. *Bruton* simply does not apply and therefore severance on the basis of these statements would be

7

improper.[26]

### III. Steven Willing's identified statements to law enforcement about Jordan Willing and JMW are not facially incriminating and remedies short of severance can cure any prejudice.

At the outset, the United States has never indicated whether or how it anticipates presenting Steven Willing's statements to law enforcement at trial. But to the extent that Steven Willing's statements are admitted, the United States is cognizant of *Bruton* and corresponding Sixth Amendment confrontation concerns.

Jordan Willing fails to explain how the identified statements facially incriminate him. For example, Steven Willing's statement that he believed the Wades may have acquired some paleontological resources that were taken from federal land before PRPA was enacted does not make any mention of Jordan Willing at all. Further, that statement does not implicate *any* of the codefendants but merely speaks to Steven Willing's belief as to where some of the paleontological resources may have originated, and thus does not implicate *Bruton*.

Similarly, Steven Willing's statements that Jordan Willing has done business with the Wades for 15 years and his statement that Jordan Willing and JMW source all their dinosaur bone from the Wades are not facially incriminating. To be sure, the United States intends to prove these facts with testimony and evidence from other witnesses. For example, the United States may choose to admit a Wades Wood & Rock receipt showing

---

[26] *See Yurok*, 925 F.3d at 437. To the extent Jordan Willing contends that Vint Wade's statements relate to a "separate conspiracy," there is only one conspiracy charged in the indictment, with all four defendants named.

that Jordan Willing purchased dinosaur bone from the Wades in September 2011.[27] Additionally, multiple JMW employees have told investigators that JMW has purchased dinosaur bones exclusively from the Wades since at least as early as 2017. It isn't as though Steven Willing is the only source of this information.

But setting aside the fact that the United States can prove the facts without reference to Steven Willing's statement, Jordan Willing fails to show how his father's statements about JMW's business association with the Wades are facially incriminating. There is nothing inherently illegal about the business relationship between Jordan Willing or JMW and the Wades. Indeed, there is nothing inherently incriminating about the acquiring, possession, and distribution of dinosaur bones.[28] The defendants are proven to violate PRPA[29] only when other evidence is presented to show that those dinosaur bones came from federal land and that the defendants knew or should have known that the dinosaur bones came from federal land. That Steven Willing's statements may become a link in the chain, however, is simply insufficient to trigger *Bruton*.[30] Jordan Willing provides no argument to the contrary but merely points to statements that name him or the other codefendants and claims admitting them would violate *Bruton*. But this alone is not enough to find *Bruton* violated, let alone to justify the disfavored remedy of

---

[27] Exhibit 1. Wades Wood & Rocks receipt number 546330 showing Jordan Willing purchased Dinosaur Bone from the Wades in 2011.

[28] *See, e.g.*, *United States v. Dickerson*, 909 F.3d 118, 126-27 (5th Cir. 2018) (holding that a statement of a non-testifying codefendant that included the name of the defendant was not alone sufficient to implicate *Bruton* because the statement did not facially implicate the defendant in any crime).

[29] Paleontological Resources Preservation Act, 16 U.S.C. § 470aaa-5(a).

[30] *United States v. Joyner*, 899 F.3d 1199, 1207 (11th Cir. 2018) (holding that statements of non-testifying codefendants that provide a "link in the chain" of evidence against the defendant alone do not implicate *Bruton*).

severance.

Finally, Jordan Willing presents a moving target as to the last contested statement: that Steven Willing, JMW, and the Wades did not label the material as dinosaur bones when they shipped it because the material was in fact agate. In one breath, Jordan Willing contends admission of this statement would violate *Bruton*. Yet in another, he challenges the United States' characterization of this statement without articulating what he believes the actual statement is. Jordan Willing has been provided both the summary of Steven Willing's statement as well as the recorded statements and his failure to identify the statement he is challenging makes this Court's job of assessing any potential *Bruton* issues impossible. Further, the statement as included in the investigator's summary does not violate *Bruton* because it again is not facially incriminatory. Mislabeling dinosaur bones as other materials is incriminating and will be presented by other evidence, such as the shipping labels. But explaining *why* the materials were not labeled as dinosaur bones is *not*. In the interview, Steven Willing states that he labeled the materials as "agate" because he believed the dinosaur bone had transformed into agate stone over the course of millions of years of being buried in the soil and he believed government regulation required him to describe the material and currently constituted, not what it used to be. This explanation, whether admitted against Steven Willing or against any of the other co-defendants, is not facially incriminating.

Even assuming *arguendo* that Jordan Willing can somehow demonstrate that any of the challenged statements implicate *Bruton*, there are measures far short of severance that should be employed to remedy the issue before considering a severance. If the

United States finds the need to admit these identified statements by Steven Willing, the statements can be sanitized by replacing the name of the codefendant(s) with a neutral pronoun and a limiting instruction, or by removing reference to the codefendant(s) altogether.[31] Alternatively, if the Court is still concerned, it could empanel two different juries, one for Steven Willing and one for the other three codefendants. The Court could then remove the other codefendants' jury from the courtroom when Steven Willing's statements are introduced, and the juries could receive separate instructions and closing arguments. Either permissible alternative would help ease the burden on the numerous witnesses who will testify at trial and provide a better option than the expense and burden of multiple trials. Either option would also eliminate any risk of prejudice the defendants might face.

## **CONCLUSION**

Counsel for Jordan Willing has identified five statements by Steven Willing that may implicate *Bruton* but fails to provide any analysis or argument explaining how or why he believes *Bruton* is implicated.[32] He fails to articulate how any of the statements facially incriminate him and it is clear that at least one does not implicate *Bruton* because it is nontestimonial. Further, to the extent any of the statements can be deemed to trigger *Bruton* concerns, those statements could be easily sanitized by replacing Jordan Willing's

---

[31] *See Verduzco-Martinez*, 186 F.3d at 1214 ("We hold that where a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, providing that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury.").

[32] Having not included the analysis in his opening brief, Jordan Willing has waived it and any belated analysis in his reply should not be considered. DUCrim 12-1(c). Alternatively, if the Court wishes to consider analysis and argument provided for the first time in reply, the government would request the opportunity to file a sur-reply.

name with a neutral pronoun or otherwise redacting the statement to be incriminatory only as to Steven Willing or by empaneling two simultaneous juries, one for Steven Willing and one for the other defendants. Both of these options are preferred to severance.

DATED this 18th of March, 2024.

*/s/Ruth Hackford-Peer*
RUTH HACKFORD-PEER
MELINA SHIRALDI
Assistant United States Attorneys