KYLER OVARD, 13570
KO LAW, PLLC
445 E 200 S #150
Salt Lake City, Utah 84111
Telephone: 435-647-6775
Email: kyler@kovardlaw.com

TARA L. ISAACSON, 7555
TARA ISAACSON LAW, LLC
445 East 200 South, Suite 150
Salt Lake City, UT 84111
Telephone: (801) 467-1700
Email: tara@taralaw.net

GREGORY FERBRACHE, 10199
FERBRACHE LAW
2150 South 1300 East, Suite 500
Salt Lake City, Utah 84106
Telephone: 801-440-7476
Email: gregory@ferbrachelaw.com

*Attorneys for Vint and Donna Wade*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH / CENTRAL DIVISION

| UNITED STATES OF AMERICA, | **DEFENDANTS VINT AND DONNA WADES' MOTION TO DISMISS INDICTMENT OR, IN THE ALTERNATIVE, MOTION TO DISQUALIFY UNITED STATE'S ATTORNEY'S OFFICE AND BLM AGENTS** |
|---|---|
| Plaintiff, | |
| vs. | |
| VINT WADE, DONNA WADE, STEVEN WILLING, and JORDAN WILLING, | |
| Defendants. | **Case No. 4:23-CR-00077** |
| | **Judge David Nuffer** |

Defendants Vint and Donna Wade ("the Wades"), through counsel, hereby submit this Motion to Dismiss or, in the alternative, Motion to Disqualify the United States Attorney's Office and Bureau of Land Management ("BLM") Agents. The basis for this Motion is that the government violated the Defendants' Sixth Amendment right to counsel when the government obtained an attorney-client privileged letter during the execution of a search warrant, marked the letter a "document of interest," and provided the letter to numerous parties involved in the investigation and in discovery.

## STATEMENT OF FACTS

1. On or about January 10, 2023, federal agents executed a search warrant on Vint and Donna Wades' ("the Wades") home.[1]

2. During the execution of the warrant, agents seized, in relevant part, a cellphone and an Apple computer.

3. Discovery provided in this matter shows that the investigation into this matter began in 2014.

4. Attorney Tara Isaacson and her former law partner, Walter Bugden, were retained on or about August 19, 2014 to represent the Wades.

5. The investigation that began in 2014 and continued to 2023 involves allegations of the purchase of dinosaur bone from federal land.

6. Some of the witnesses identified in 2014 will be witnesses in this case and are identified in the discovery provided in 2023.

---

[1] *See* Indictment, filed September 27, 2023 (ECF No. 1).

7. The discovery provided in 2023 makes it clear that this investigation has been ongoing since 2014.

8. Ms. Isaacson communicated with Assistant United States Attorney Andrew Choate on August 27, 2014 and provided notice that the Wades were represented by counsel.

9. Ms. Isaacson and Mr. Bugden communicated confidential and privileged information to the Wades in writing about the investigation in 2014.

10. No charges were filed against the Wades as a result of the investigation in 2014.

11. After the warrant was executed in 2023, the Wades contacted Ms. Isaacson for assistance, but she was unavailable due to her schedule and asked Kyler Ovard to assist the Wades.[2]

12. The same day the search warrant was executed, January 10, 2023, Assistant United States Attorney Ruth Hackford-Peer emailed Kyler Ovard and Gregory Ferbrache, counsel for the Wades, and informed counsel that agents seized a cellular device and an Apple computer.

13. On January 17, 2023, Special Agent Brent Kasza with the Utah Attorney General's Office requested that an Apple computer taken during the execution of the federal search warrant be processed by the Regional Computer Forensics Laboratory ("RCFL").[3]

14. On February 16, 2023, Ms. Hackford-Peer emailed Mr. Ovard a copy of a search warrant for Mr. Wade's cell phone and requested Mr. Wade surrender his cell phone pursuant to the warrant.

---

[2] Ms. Isaacson and Mr. Ovard routinely co-counsel cases since Mr. Bugden retired in 2020.
[3] *See* Report of Examination, attached as Exhibit A.

15. That same day, Mr. Ovard responded to Ms. Hackford-Peer's email and stated that he was concerned about attorney-client communications on the phone, and inquired if a taint team could remove privileged material.

16. Ms. Hackford-Peer responded and indicated that a filter team would review the contents of the phone before she and an agent received the phone.

17. Mr. Wade surrendered his cellular phone to agents at the Bureau of Land Management ("BLM") office in Moab, Utah on February 21, 2023.

18. Based upon information and belief, a taint team was set up that same day. Assistant United States Attorney Jacob Strain was designated as the attorney handling the taint issues.

19. On April 12, 2023, an investigator with the Utah Attorney General who is designated to work with the RCFL examined the contents of the Wades' computer.[4]

20. On or about September 27, 2023, an Indictment was filed against Vint Wade, Donna Wade, Steven Willing, and Jordan Willing ("Codefendants").[5]

21. Ms. Isaacson entered her appearance as co-counsel for Mr. Wade on October 20, 2023.[6]

22. Discovery was provided to the Wades and Codefendants on or about October 20, 2023.

23. In December 2023, Brendan Hammond, an associate of Rachel Cannon, counsel for Jordan Willing, found an attorney-client privileged letter ("the letter") while reviewing discovery and immediately notified Ms. Isaacson.

---

[4] *See* RCFL Notes, attached as Exhibit B.
[5] *See* Indictment, filed September 27, 2023 (ECF No. 1).
[6] *See* Appearance of Counsel, filed October 20, 2023 (ECF No. 52).

24. The privileged letter was from Tara Isaacson and her law partner at the time, Walter Bugden, and was written to their clients, Vint and Donna Wade, in August 2014.[7] The letter is two pages and is on the firm's letterhead.

25. The privileged letter relates to the government's investigation and contains confidential and privileged information that was communicated to the Wades. The information directly bears on evidence in the 2023 indictment.

26. The privileged letter was found in the initial production of discovery.[8]

27. A report was generated of Vint Wade's computer and 33 documents were marked and identified as "documents of interest."

28. It is unclear who marked the letter a "document of interest," but it is clear that no defense counsel or a person working for the defense marked it as a "document of interest."

29. On December 26, 2023, Tara Isaacson, counsel for Vint Wade, emailed AUSA Jacob Strain about the privileged material found in discovery.

30. On January 9, 2023, Mr. Strain emailed Ms. Isaacson and indicated that the letter must have been from "a raw, unsearched, unscoped full device or search warrant return" and that "the prosecution team made those items available to defense counsel."

---

[7] Undersigned counsel has not attached a copy of the letter to this Motion to avoid exposing any additional parties to the privileged material that is the subject of this Motion.

[8] *See*, First Notice of Compliance, filed October 20, 2023 (ECF No. 43). The government filed an 11-page discovery index of the files provided. The privileged letter was located in the Electronic Downloads identified on page 15 of the Notice. Wade, Vint (Electronic Computer Download Seized during execution of Search Warrant. Produced Natively via USB ELEC-VW-01-00001).

31. On January 10, 2024, Mr. Strain emailed Ms. Isaacson and indicated that the privileged letter was originally on Mr. and Mrs. Wade's computer. The computer was seized pursuant to a search warrant, copied, and returned to the Wades.

32. Mr. Strain indicated that the privileged letter would have been marked a "document of interest" by one of two BLM agents.

33. Mr. Strain noted that copies of the computer were made and distributed. One copy was located in a BLM evidence locker in St. George, Utah; one copy was in the possession of BLM agent Jason Bulkley; four copies were provided to defense counsel for Vint Wade, Donna Wade, Steven Willing, and Jordan Willing; and there was a "possibility" that a paralegal made a copy of the computer on a thumb drive or hard drive.

34. Mr. Strain later confirmed that the paralegal had an electronic copy of the evidence. The paralegal provided it to Mr. Strain, who deleted the privileged document.

35. Mr. Strain noted that it was possible that the RCFL may have obtained a copy of the computer from the BLM.

36. Additionally, Brent Kasza, an investigator with the Utah Attorney General's Office received a copy of the computer.

37. On January 11, 2024, Agent Smith of the BLM, met with Special Agent Bulkley at the St. George, Utah BLM office. Agent Smith deleted the privileged letter off the drive possessed by Special Agent Bulkley.

38. Special Agent Bulkley provided Agent Smith with a media tape that contained a digital copy of the computer. Agent Smith transported the tape to his office in Kanab, Utah and placed it into an evidence locker.

39. As of the date of the filing of this motion, upon information and belief, Agent Kasza from the Utah Attorney General's Office was unable to locate his copy of the evidence and it has not been recovered.

## ARGUMENT

I. **THIS COURT SHOULD DISMISS THE INDICTMENT, OR, IN THE ALTERNATIVE, DISQUALIFY THE U.S. ATTORNEY'S OFFICE AND THE AGENTS FROM THIS CASE FOR VIOLATING THE WADES' SIXTH AMENDMENT RIGHT TO COUNSEL.**

The Wades respectfully request this Court dismiss the Indictment. In the alternative, this Court should disqualify the U.S. Attorney's Office for the District of Utah and the BLM agents from this matter for violating the Wades' Sixth Amendment right to counsel by accessing and distributing attorney-client material that it knew was privileged. "The privilege protecting confidential communications between an attorney and his client dates back to the Tudor dynasty at least."[9] The Supreme Court has "recognized the attorney-client privilege as 'the oldest of the privileges for confidential communications known to the common law.'"[10] Attorney-client privilege "is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial. To provide effective assistance, a lawyer must be able to communicate freely without fear that his or her advice and legal strategy will be seized and used against the client in a criminal proceeding."[11]

---

[9] *In re Grand Jury Subpoenas (04-124-03 & 04-124-05)*, 454 F.3d 511, 519 (6th Cir. 2006) (internal citation omitted).
[10] *Id*. (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)).
[11] *United States v. Neill*, 952 F. Supp. 834, 839 (1997) (internal quotation marks omitted) (internal citations omitted).

"Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[12] The Supreme Court has explained that in cases where attorney-client privilege has been violated, the approach is to "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial."[13] Dismissal of the indictment is appropriate when there is demonstrable prejudice "or substantial threat thereof."[14]

### a. The Government violated the Wades' Sixth Amendment right when the prosecution team obtained and disseminated attorney-client privileged material.

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at all critical stages of the criminal proceedings."[15] "Because the primary purpose of the right to counsel is to secure the fundamental right to a fair trial, the benchmark of a Sixth Amendment claim is the fairness of the adversary proceeding. Thus, to prove a Sixth Amendment violation, a defendant must normally demonstrate some effect of [the] challenged conduct on the reliability of the trial process—prejudice."[16] However, in some cases, prejudice is presumed, and the government's conduct is a per se Sixth Amendment violation. For example, a per se Sixth Amendment violation occurs "when the government prevent[s] the defendant from consult[ing] his attorney before testifying…, or barre[s] direct examination of the defendant."[17]

---

[12] *United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 668 (1981).
[13] *Id*. at 365.
[14] *Id*.
[15] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1267 (10th Cir. 2023) (quoting *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (quotation marks omitted)).
[16] *Id*. (internal citations omitted) (internal quotation marks omitted).
[17] *Id*. at 1267-68 (citing *Geders v. United States*, 425 U.S. 80, 81, 96 S. Ct. 1330, 47 L. Ed. 2d

In these cases, prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost."[18]

The Tenth Circuit adopted a per se rule in *Shillinger v. Haworth*.[19] In that case, a sheriff's deputy was present during several meetings between an in-custody defendant and his attorney. The deputy was required to be present because the defendant was in custody. The attorney paid the deputy for his time and instructed him that nothing said should leave the room.[20] Nevertheless, "the deputy spoke with the prosecuting attorney, who obtained damaging information about the defense and attempted to use it at trial."[21] The defendant was convicted and appealed. On appeal, the Tenth Circuit held:

> [A] prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant…[A]bsent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. Put differently, when the [government] becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect . . . must be presumed. This presumption is conclusive—the court must accept that the defendant suffered prejudice even if the government presents evidence to the contrary.[22]

The Court explained that "intrusions into the attorney-client relationship are a 'state-created procedure[] [to] impair the accused's enjoyment of the Sixth Amendment guarantee by

---

592 (1986); *Ferguson v. Georgia*, 365 U.S. 570, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961) (internal quotation marks omitted)).
[18] *Id*. at 1268 (citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).
[19] *Shillinger v. Haworth*, 70 F.3d 1132, 1134 (10th Cir. 1995).
[20] *Id*. at 1134.
[21] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1269 (10th Cir. 2023) (citing Shillinger , 70 F.3d at1134-36).
[22] *Id*. (citing *Shillinger*, 70 F.3d at 1142) (internal quotation marks omitted).

disabling his counsel from fully assisting and representing him."[23] Because prejudice is so likely, a case-by-case inquiry is unnecessary.[24] On the other hand, when "the state has a legitimate law enforcement purpose for its intrusion, such cases require proof of a realistic possibility of injury to the defendant or benefit to the State in order to constitute a violation of a defendant's Sixth Amendment rights."[25]

In this case, the government has intruded upon the attorney-client relationship and impaired the Wades' Sixth Amendment right to counsel. The government's investigation into the Wades dates back to at least 2014. When the Wades learned they were being investigated, they retained counsel, Ms. Isaacson and Mr. Bugden, to represent them. The government was aware that the Wades had counsel because counsel explicitly notified the government in August 2014.

Critical to that representation was privileged communication between Ms. Isaacson, Mr. Bugden, and their clients—the Wades. One such communication occurred in an attorney-client privileged letter from Ms. Isaacson and Mr. Bugden in August 2014. The letter is two pages and is on law firm letterhead. The letter contains confidential and privileged communication about the investigation and a witness involved in the instant case. It should be clear to any member of the prosecution team that this is a letter from an attorney to a client. It is clear from the discovery provided that the current investigation of the Wades has been ongoing since 2014.

---

[23] *Id*. at 1269-70 (quoting Shillinger, 70 F.3d at 1141 (quoting *United States v. Decoster*, 624 F.2d 196, 201, 199 U.S. App. D.C. 359 (D.C. Cir. 1979)).
[24] *Id*. at 1270.
[25] *United States v. Diaz*, No. 24-CR-0032 MV, 2024 U.S. Dist. LEXIS 23964, at *8-9 (D.N.M. Feb. 8, 2024) (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1134) (quoting *Weatherford*, 429 U.S. 545, 557 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) (quotation marks omitted)).

Accordingly, the information contained in the attorney-client privileged letter bears directly on the current case.[26]

As previously noted, the government was on notice that the Wades had counsel in this matter as far back as 2014. Ms. Isaacson provided notice to the United States Attorney's Office on August 27, 2014. It was clear, early on in this case, that there were concerns about privileged material, so a taint team was established. Counsel for the government sent an email to Kyler Ovard and Gregory Ferbrache, counsel for the Wades, the same day that federal agents executed a search warrant at the Wades' residence. A review of the relevant documents demonstrates that the Wades' computer was submitted to the RCFL *after* the formation of the taint team, apparently without the taint team first reviewing the computer for privileged material.[27]

After the computer was analyzed, the contents were copied and widely disseminated. One copy was placed in a BLM evidence locker in St. George, Utah; one copy was in the possession of BLM agent Jason Bulkley; four copies were provided to defense counsel for Vint Wade, Donna Wade, Steven Willing, and Jordan Willing; and a paralegal made a copy stored at her office. Additionally, Brent Kasza, an investigator with the Utah Attorney General's Office received a copy of the computer.

According to Assistant United States Attorney Jacob Strain, the privileged letter was from "a raw, unsearched, unscoped full device or search warrant return" and "*the prosecution team* made those…items available to defense counsel." In December 2023, Brendan Hammond, an associate of Rachel Cannon, counsel for Jordan Willing, found the letter while reviewing

---

[26] Undersigned counsel has not attached a copy of the letter to this Motion to avoid exposing any additional parties to the attorney-client privileged material that is the subject of this Motion. Undersigned counsel has not described the content of the letter in detail for the same reason.
[27] *See* Intermountain West Regional Computer Forensics Laboratory Notes, Ex. B.

discovery. Notably, the document was located in a subset of discovery marked "documents of interest." There were only 33 documents marked "documents of interest." The government has not been able to identify who marked the privileged letter a "document of interest" but indicated that it was one of two BLM agents involved in the case. It is clear that no one from the defense teams marked the letter as a "document of interest." While the government attempted to neutralize the taint by locating and deleting copies of the privileged letter, they were unable to do so completely. Agent Kasza of the Utah Attorney Generals Office, who was directly involved with the investigation and handling of evidence, was unable to locate the copy he received and it has not been recovered.

Here, the government executed a search warrant and seized electronics from the Wades knowing that the Wades were represented by counsel and should have known that Wades were represented by counsel in 2014. The government subsequently set up a taint team, but the RCFL copied and analyzed the Wades' computer without the assistance of the taint team. Subsequently, the contents of the computer, including the privileged letter, were distributed. Notably, the letter was not found in a large trove of documents, but was in a subset of discovery that contained only 33 documents, provided by the prosecution, marked "documents of interest." The government has not been able to retrieve all copies of the letter that were disseminated.

In this case, the government intruded into the attorney-client relationship. As noted, the government was aware that the Wades were represented by counsel. As evidence of that, the government set up a taint team to filter privileged material. Nonetheless, the Wades' computer was submitted to the RCFL where it was analyzed and copied, seemingly without the assistance of the taint team. Apparently, one of the BLM agents marked the attorney-client privileged letter

a "document of interest" and the prosecution team provided it in discovery. In this circumstance, the government's "intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of" the Wades.[28]

Although the government had a warrant to seize the computer, when the evidence containing privileged material was submitted, analyzed, copied, and distributed by the prosecution, apparently without any review from the taint team, the government became "privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lack[ed] a legitimate justification for doing so." Accordingly, "a prejudicial effect . . . must be presumed. This presumption is conclusive—the court must accept that the defendant suffered prejudice even if the government presents evidence to the contrary.[29]

Even if this Court finds that the intrusion was not purposeful, the government's conduct violated the Wades' Sixth Amendment rights. When "the state has a legitimate law enforcement purpose for its intrusion, such cases require proof of a realistic possibility of injury to the defendant or benefit to the State in order to constitute a violation of a defendant's Sixth Amendment rights."[30] Here, the government's conduct creates a realistic possibility of injury to the Wades.

The Wades have been the target of the government's investigation for nine years, according to the discovery. The investigation in 2014 is part of the investigation underlying the current Indictment. While undersigned counsel does not want to offer a description of the

---

[28] *Id*. (citing *Shillinger v. Haworth*, 70 F.3d 1132, 42) (internal quotation marks omitted).
[29] *Id*. (citing *Shillinger*, 70 F.3d at 42) (internal quotation marks omitted).
[30] *United States v. Diaz*, No. 24-CR-0032 MV, 2024 U.S. Dist. LEXIS 23964, at *8-9 (D.N.M. Feb. 8, 2024) (citing *Shillinger*, 70 F.3d at1134) (quoting *Weatherford*, 429 U.S. 545, 557 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) (quotation marks omitted)).

substantive content of the letter at the risk of further contaminating the U.S. Attorney's Office, the privileged letter that was collected, marked a document of interest, and disseminated, directly relates to this case. The letter contains confidential and privileged communications about the investigation and a witness involved in the case. At a minimum, this conduct creates "a realistic possibility of injury to the defendant" and "constitute[s] a violation of [the] defendant[s]' Sixth Amendment rights."[31]

### b. The Indictment should be dismissed, or, alternatively, the U.S. Attorney's Office and the BLM agents who reviewed the privileged letter should be disqualified from this case.

The Wades respectfully request that the Indictment be dismissed as a result of the Sixth Amendment violation in this case. Alternatively, the Wades respectfully request that the U.S. Attorney's Office and the BLM agents who reviewed the privileged letter be disqualified from the matter. "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[32] The Supreme Court has explained that in cases where attorney-client privilege has been violated, the approach is to "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial."[33] Dismissal of the indictment is appropriate only when there is demonstrable prejudice "or substantial threat thereof."[34]

---

[31] *Id.*, No. 24-CR-0032 MV, 2024 U.S. Dist. LEXIS 23964, at *8-9 (D.N.M. Feb. 8, 2024) (citing *Shillinger*, 70 F.3d at 1134) (quoting *Weatherford*, 429 U.S. 545, 557 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) (quotation marks omitted)).
[32] *Morrison*, 449 U.S. at 364.
[33] *Id.* at 365.
[34] *Id.*

In this case, the appropriate remedy is dismissal of the Indictment because the government cannot neutralize the taint that occurred from the government's dissemination of attorney-client privileged material. As previously noted, the attorney-client letter was distributed at least eight places. After the computer was analyzed at the RCFL, a copy of the computer was placed in a BLM evidence locker in St. George, Utah; one copy was in the possession of BLM agent Jason Bulkley; four copies were provided to defense counsel for Vint Wade, Donna Wade, Steven Willing, and Jordan Willing; a paralegal for the U.S. Attorney's Office made a copy and stored it at her office, and Brent Kasza, an investigator with the Utah Attorney General's Office received a copy of the computer.

While the taint team took steps to neutralize the taint, they were unable to do so successfully. Brent Kasza was unable to locate the copy he received, and it has not been recovered. Furthermore, in the investigation into this matter, Mr. Strain indicated that the privileged letter was from "a raw, unsearched, unscoped full device or search warrant return" and "the prosecution team made those…items available to defense counsel" in discovery. Under these circumstances, there is no way to sufficiently neutralize the taint created by the government and repair violation of the Wades' Sixth Amendment right.

If this Court finds that dismissal is not appropriate, the Wades respectfully request this Court disqualify the U.S. Attorney's Office and the BLM agents who marked this material because the taint cannot be sufficiently neutralized. Here, not only did the U.S. Attorney's Office search the Wades' computer without the benefit of the taint team that was in place, the document was marked a "document of interest" with 33 other documents and then provided by the

prosecution team to defense counsel. Here, the government cannot adequately neutralize the taint in a manner that remedies the Sixth Amendment violation and must be disqualified.

## CONCLUSION

Attorney-client privilege "is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial. To provide effective assistance, a lawyer must be able to communicate freely without fear that his or her advice and legal strategy will be seized and used against the client in a criminal proceeding."[35] In this case, the government has seized counsel's legal strategy and disseminated confidential, privileged communication in the course of a criminal proceeding. This conduct violates the Wades' Sixth Amendment right and the appropriate remedy is dismissal of the Indictment. If this Court finds dismissal is not appropriate, the Wades respectfully request this Court disqualify the U.S. Attorney's Office and the BLM agents from the matter.

DATED: April 10, 2024

By: /S/ Tara L. Isaacson
TARA L. ISAACSON
*Attorney for Defendant Vint Wade*

By: /S/ Kyler Ovard
KYLER OVARD
*Attorney for Defendant Vint Wade*

By: /S/ Gregory Ferbrache
GREGORY FERBRACHE
*Attorney for Defendant Donna Wade*

---

[35] *United States v. Neill*, 952 F. Supp. 834, 839 (1997) (internal quotation marks omitted) (internal citations omitted).