KYLER OVARD, 13570
KO LAW, PLLC
445 E 200 S #150
Salt Lake City, Utah 84111
Telephone: 435-647-6775
Email: kyler@kovardlaw.com

TARA L. ISAACSON, 7555
TARA ISAACSON LAW, LLC
445 East 200 South, Suite 150
Salt Lake City, UT 84111
Telephone: (801) 467-1700
Email: tara@taralaw.net

GREGORY FERBRACHE, 10199
FERBRACHE LAW
2150 South 1300 East, Suite 500
Salt Lake City, Utah 84106
Telephone: 801-440-7476
Email: gregory@ferbrachelaw.com

*Attorneys for Defendants Vint and Donna Wade*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH / CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VINT WADE, DONNA WADE, STEVEN WILLING, and JORDAN WILLING,<br><br>Defendants. | **REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS INDICTMENT OR, IN THE ALTERNATIVE, MOTION TO DISQUALIFY UNITED STATE'S ATTORNEY'S OFFICE AND BLM AGENTS FROM CASE**<br><br>**Case No. 4:23-CR-00077**<br><br>**Judge David Nuffer** |

Defendants Vint and Donna Wade ("the Wades"), through counsel, hereby submit this Reply in Support of Amended Motion for to Dismiss or, in the alternative, Motion to Disqualify the United States Attorney's Office and BLM Agents from this Case. The Wades respectfully request this Court grant the Motion because the government violated the Defendants' Sixth Amendment right to counsel when the government obtained an attorney-client privileged letter during the execution of a search warrant, marked the letter a "document of interest," and provided the letter to numerous parties involved in the investigation and as part of discovery.

## STATEMENT OF FACTS

1. Vint and Donna Wade ("the Wades") own Wade's Wood and Rocks in Moab, Utah.
2. As part of their business, the Wades collect, purchase, and sell dinosaur bones.
3. The government began investigating the Wades in 2014, alleging that they illegally excavated, removed, collected, and purchased dinosaur bone from federal land.[1]
4. The Wades were aware that they were the subject of an investigation and retained attorneys Tara Isaacson and Walter Bugden to represent them.
5. On or about August 27, 2014, Ms. Isaacson sent Assistant United States Attorney Andrew Choate a letter sent via email and U.S. Mail notifying him that the Wades were represented by counsel.[2]
6. As is referenced in the letter, the Wades phones were seized and searched in 2014 during the federal investigation.

---

[1] *See* BLM Case Summary INV-BLM-01-07120 at p. 3.
[2] *See* Letter to AUSA Choate, dated August 27, 2014, attached as Exhibit A.

7. Around that same time, Ms. Isaacson and Mr. Bugden sent the Wades a privileged letter regarding the 2014 investigation.

8. The Wades were not indicted in 2014 and were unaware that there continued to be an ongoing investigation into allegations of obtaining dinosaur bones from federal lands.

9. After a search warrant was executed in January of 2023, the Wades contacted Ms. Isaacson for assistance, but she was unavailable due to her trial schedule and asked Kyler Ovard to assist the Wades.[3]

10. Ms. Isaacson became available to co-counsel this matter in the fall of 2023 and notified the current prosecution team of her representation of Mr. Wade when she entered her appearance as co-counsel for Mr. Wade on October 20, 2023.[4]

11. The discovery provided in this matter describes an ongoing investigation into the Wades from 2014 to the indictment in 2023.

12. The Wades dispute the allegations made by the confidential informants, but it is clear from the reports provided by the government that this case has been an ongoing investigation into the Wades since 2014.

13. For example, as indicated in discovery, in September 2016, the BLM was involved in an investigation in which an unidentified confidential informant claimed that they had sold dinosaur bones to the Wades. The confidential informant also claimed that the Wades were shipping dinosaur bones to China.[5]

14. In 2019, the Grand County Sherriff's Office informed the BLM that two people were

---

[3] Ms. Isaacson and Mr. Ovard routinely co-counsel cases since Mr. Bugden retired in 2020.
[4] *See* Appearance of Counsel, filed October 20, 2023 (ECF No. 52).
[5] *See* BLM Case Summary INV-BLM-01-07120 at p. 4.

arrested for drug related offenses. Those people were allegedly found in possession of dinosaur bones and digging tools. During that investigation, an unidentified confidential informant claimed they had illegally collected and sold dinosaur bones to the Wades.[6]

15. Between October 6, 2021, and January 27, 2022, Special Agent Bulkley with the BLM communicated with a confidential informant who claimed that another individual was selling illegally collected dinosaur bones to the Wades.[7]

16. Between February 16, 2022, and November 2022, BLM law enforcement officials communicated with two people who apparently had information about the illegal collection of dinosaur bones from federal land.[8]

17. According to the BLM, between February 16, 2022, and November 2022, the confidential informant claimed that they had illegally collected dinosaur bones and sold the bones to the Wades.[9]

18. On or about January 10, 2023, federal agents executed a search warrant on the Wades home and seized, in relevant part, a cellphone and an Apple computer.

19. A taint team was set up on February 21, 2023. AUSA Jacob Strain was assigned to address taint issues.

20. On or about April 12, 2023, examiner Michael Powell of the RCFL examined the contents of the Wades' computer without utilizing the taint team.

21. The letter, which was found on the Wades' computer, was marked a "document of interest", along with 32 other documents and shared with numerous parties.

---

[6] *Id.* at pp. 4-5.
[7] *Id.* at p. 5.
[8] *Id.*
[9] *Id.*

22. The privileged letter from 2014 related to the same allegations and a witness involved in the 2023 indictment.

23. Once the issue of the privileged letter was raised by Ms. Isaacson, one copy of the computer, containing the privileged letter, was located in a BLM evidence locker in St. George, Utah; one copy was in the possession of BLM agent Jason Bulkley; four copies were provided to defense counsel for Vint Wade, Donna Wade, Steven Willing, and Jordan Willing; a paralegal for the prosecution team had a copy on a thumb drive or hard drive; and Brent Kasza, an investigator with the Utah Attorney General's Office, received a copy of the privileged material.[10]

24. AUSA Strain attempted to locate and delete all copies of the letter, but at the time the Wades filed their Amended Motion, Agent Kasza was unable to locate his copy or copies of the privileged letter.

25. According to AUSA Strain, on February 27, 2024, Agent Kasza reported that "he had moved three times, and after a diligent search, he could not find any materials from the RCFL in this case."[11]

26. Agent Kasza indicated to AUSA Strain that if he "stumbled across anything from the RCFL, he would call [him] right away and provide me the records in their entirety without looking at them."[12]

27. On April 17, 2024, Agent Kasza located one electronic copy of the materials on a computer, which he deleted on April 18, 2024.[13]

---

[10] AUSA Strain Decl., Ex. 2 to Gov't Opp. at ¶19, 22 (ECF No. 120-2)
[11] *Id.* at ¶31.
[12] *Id.*

28. It is not clear if Agent Kasza has additional copies of the privileged material on portable storage devices or other computers.

**ARGUMENT**

I. **THE UNITED STATE'S ATTORNEY'S OFFICE VIOLATED THE WADES' SIXTH AMENDMENT RIGHT TO COUNSEL.**

The government violated the Wades' Sixth Amendment right to counsel when the government obtained an attorney-client privileged letter during the execution of a search warrant, marked the letter as a "document of interest," and provided the letter to numerous parties involved in the investigation and as part of discovery. The government's claim that the Wades' Sixth Amendment right has not been violated because the current assigned prosecutors did not review the privileged letter, should be rejected by this Court.[14] Accordingly, the Wades respectfully request this Court dismiss the Indictment, or, in the alternative, disqualify the U.S. Attorney's Office and BLM agents from this matter.

a. **The investigation into the Wades has been ongoing since 2014.**

The government first claims that the investigation into the Wades has not been ongoing. The government maintains that the USAO investigated the Wades in 2014 and that investigation was closed in 2016. The government notes that that the current investigation was not opened until August 3, 2022.[15] The government's claim is misleading.

The discovery provided in this matter makes clear that the investigation into the Wades started in 2014 and continued until indictment in 2023. The Wades dispute the allegations made

---

[13] *Id.* at ¶33, 34.
[14] *See* Gov't Opp. 19. (ECF No. 120)
[15] *Id.* at 14.

6

by the confidential informants, but in September 2016, according to the discovery provided in this case, the BLM was involved in an investigation in which an unidentified confidential informant claimed that they sold illegally collected dinosaur bones to the Wades. The confidential informant also claimed that the Wades were shipping dinosaur bones to China.[16]

According to the discovery provided, in 2019, the Grand County Sherriff's Office informed the BLM that two individuals were arrested for drug related offenses. Those suspects were allegedly found in possession of dinosaur bones and digging tools. During that investigation, an unidentified confidential informant claimed they illegally collected dinosaur bones and then sold the bones to the Wades.[17] Between October 6, 2021, and January 27, 2022, Special Agent Bulkley with the BLM had contact with a confidential informant who claimed that a person was selling illegally collected dinosaur bones to the Wades.[18] The Wades dispute the allegations made by the informants, but the discovery makes clear that this has been an ongoing investigation of the Wades since 2014.

Between February 16, 2022, and November 2022, BLM law enforcement officials communicated with two people who claimed to have information about the illegal collection of dinosaur bones from federal land.[19] According to the BLM, between February 16, 2022, and November 2022, a confidential informant claimed that he illegally collected and sold bones to the Wades.[20] The discovery provided by the government makes clear that the government relied on the investigation that started in 2014 and continued until indictment in 2023.

---

[16] *See* BLM Case Summary INV-BLM-01-07120 at p. 4.
[17] *Id*. at pp. 4-5.
[18] *Id*. at p. 5.
[19] *Id*.
[20] *Id*.

The government also claims that the current members of the prosecution team were unaware of the prior USAO investigation into the Wades.[21] The BLM case summary explicitly references the investigation from 2014 to the present. Although the current prosecution team may not have been aware of Ms. Isaacson's representation and communication with the office in 2014, the prosecution team is responsible for the conduct of agents who are seizing and searching evidence pursuant to a federal search warrant. This is not a case where a privileged letter was simply contained in a large trove of documents and overlooked. It was a letter on attorney letterhead that was marked as a "document of interest" in just 33 identified documents. This privileged letter is communication about the same investigation and a witness identified in the 2023 indictment. This was a letter on law firm letterhead and was obviously attorney-client privileged to anyone who reviewed it. A search for "lawyer" in the database would have brought up the privileged letter. That privileged letter was then in the possession of the BLM agents, Agent Kazsa, prosecution team support staff and was then disseminated to counsel for co-defendants.

The government further claims that the 2014 investigation and the 2022 investigation are "separate cases, involving separate crimes and separate investigators, and are not one continuous investigation."[22] While there may have been a technical closing and opening of the case at the USAO, the discovery makes clear that from 2014 through 2023, the Wades were under investigation for allegedly illegally excavating, removing, collecting, and purchasing dinosaur bone from federal land.[23] While the people involved in the prosecution team and the

---

[21] *See* Gov't Opp. 14 (ECF No. 120)
[22] *Id.*
[23] *See* BLM Case Summary INV-BLM-01-07120 at p. 3.

investigative teams may have changed, at all relevant times the investigation into the Wades has been based on the same alleged conduct. The investigation has continuously been conducted by a federal agency – the BLM.

Finally, the government argues that because the prosecution team had no knowledge of the 2014 investigation, the prosecution team had no knowledge that Ms. Isaacson has represented the Wades.[24] The defendant's Sixth Amendment right did not dissipate when the USAO assigned new attorneys to the 2022 investigation. In other words, the USAO was on notice in 2014 that the subjects of their investigation were represented by counsel. Because the government was on notice of the representation, the government had a burden to not violate the Wades' Sixth Amendment right. This burden did not go away simply because new attorneys were assigned to the matter.

   b. **The government was on notice that privileged material may have been on the computer and the government should have used the taint team that was already in place to review the contents of the computer.**

The government asserts that they were not on notice that any privileged materials may have been on the computer, and, even if the government had been aware, the filter review would have been insufficient to identify the letter.[25] The Wades disagree. Federal agents have investigated the Wades since 2014. The USAO received written communication from Ms. Isaacson and Mr. Bugden about the investigation and their representation of the Wades. Undoubtedly, the USAO was on notice that the Wades were represented by counsel starting during the investigation that began in 2014.

---

[24] *See* Gov't Opp. 14-15. (ECF No. 120)
[25] *Id*. at 15.

9

Given that the USAO received communication from attorneys representing the Wades, it would only be reasonable to assume that the Wades, who had been the subject of the previous investigation, also received communication from their attorneys. Clients can, and often do, change counsel. It was not Mr. Ovard's responsibility to re-inform the USAO of a fact they had been made aware of years prior. Rather, it was the USAO's responsibility to not violate the Wades' Sixth Amendment right.

Further, the government's argument that their filter review would have been insufficient to capture the letter had the taint team been utilized to review the contents of the computer is not convincing. The Sixth Circuit Court of Appeals has explained:

> [T]aint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege, and this supposition is substantiated by past experience. In *United States v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991), for instance, the government's taint team missed a document obviously protected by attorney-client privilege, by turning over tapes of attorney-client conversations to members of the investigating team. This Noriega incident points to an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion.[26]

Here, the government asserts that the search terms they utilized, "Kyler Ovard" and "Gregory Ferbrache" would have been insufficient to catch the attorney-client privileged letter marked a document of interest. The government's argument misses the point. The government, by its own neglect, used incredibly limited terms to capture potentially privileged communications. A search using the term "lawyer" would have located the letter in the copy of the computer. It is

---
[26] *In re Grand Jury Subpoenas* (04-124-03 & 04-124-05), 454 F.3d 511, 523 (6th Cir. 2006)

10

not the Wades' fault that the government seized evidence that contained attorney-client privileged material, when the government at a minimum should have known the Wades had been represented by counsel, and then failed to utilize the taint team that was already in place to search the electronic evidence.

  c. **The prosecution team disseminated the privileged material.**

The government asserts that the contents of the privileged letter were not viewed by the current lawyers on the prosecution team so "there can be no Sixth Amendment violation."[27] The Wades disagree. Here, the privileged letter was located in a subset of discovery that was widely distributed marked "documents of interest." According to Mr. Strain, the privileged letter was from "a raw, unsearched, unscoped full device or search warrant return" and "*the prosecution team* made those…items available to defense counsel."[28] Accordingly, the government is arguing that the prosecution team did not review the discovery that it provided to defense counsel specifically marked "documents of interest." The prosecution team is more than just the assigned attorneys to the case. Mr. Powell reviewed evidence seized pursuant to a federal search warrant, marked the privileged letter a "document of interest" and then the materials were provided to Agent Kasza, BLM agents and support staff of the prosecution team.

More importantly, the government claims that "all copies of the Letter have been located and deleted."[29] It is not clear that Agent Kasza has located all copies of the privileged letter. When Agent Kasza was contacted by AUSA Strain on February 27, 2024, he wasn't sure if he

---

[27] *See* Gov't Opp. 17. (ECF No. 120)
[28] *See* AUSA Strain Decl., Ex. 2 to Gov't Opp. at ¶18 (Emphasis added) (ECF No. 120-2)
[29] *See* Gov't Opp. 16. (ECF No. 120)

11

had a copy.[30] He reported that he had moved three times and had attempted to locate the material from the RCFL, but was unable to do so.[31] On April 17, 2024, Agent Kasza contacted the USAO and notified them that he had located a copy of the RCFL material on a computer.[32] He located one copy on a computer and reported that he deleted it, but it would be reasonable to assume that he would have had a copy of the file on some sort of portable device in order to copy it to a computer hard drive. The dissemination of the privileged material has not been rectified.

### d. The prejudicial effect of the Sixth Amendment violation should be presumed.

Finally, the government asserts that there has been no prejudicial effect. The Wades disagree. Here, the government seized the Wades' electronic devices when the government knew, or should have known, that the devices may contain privileged material. The government set up a taint team but searched the Wades' computer without the benefit of that team. The letter would have been located had the search term "lawyer" simply been used. This was not a privileged document that was found amongst thousands of documents. This was a document that was reviewed by an agent of the government and marked as a "document of interest." This was a letter to the Wades regarding the same conduct and a witness that is the subject of the 2023 indictment. Then, multiple copies of the computer that contained the privileged letter were disseminated to both federal and state investigators and to counsel for the four defendants. As was discussed above, Agent Kasza has only located one copy of the privileged material after months of searching. Accordingly, the governments' efforts to neutralize the contamination from the dissemination of attorney-client privileged material has been unsuccessful. Here, the

---

[30] AUSA Strain Decl., Ex. 2 to Gov't Opp. at ¶31 (ECF No. 120-2)
[31] *Id.* at ¶ 31.
[32] *Id.* at ¶ 33.

dissemination of a privileged letter that discussed, in detail, aspects of the case in 2014 that remain a critical part of the government's case today creates a realistic possibility of injury to the Wades. [33]

## CONCLUSION

The Wades respectfully requests this Court dismiss the Indictment because the government violated the Wades' Sixth Amendment right to counsel. If this Court finds dismissal is not appropriate, the Wades respectfully request this Court disqualify the U.S. Attorney's Office and BLM agents from the matter.

DATED: May 1, 2024

By: /S/ Tara L. Isaacson
TARA L. ISAACSON
*Attorney for Defendant Vint Wade*

By: /S/ Kyler Ovard
KYLER OVARD
*Attorney for Defendant Vint Wade*

By: /S/ Gregory Ferbrache
GREGORY FERBRACHE
*Attorney for Defendant Donna Wade*

---

[33] *Id.*, No. 24-CR-0032 MV, 2024 U.S. Dist. LEXIS 23964, at *8-9 (D.N.M. Feb. 8, 2024) (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1134) (quoting *Weatherford*, 429 U.S. 545, 557 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) (quotation marks omitted)).