THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VINT WADE, and DONNA WADE,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS OR DISQUALIFY**<br><br>Case No. 4:23-cr-00077-DN-DAO-1,2<br><br>District Judge David Nuffer |

Defendants Vint and Donna Wade (collectively, the "Wades") seek dismissal of the Indictment[1] against them or, alternatively, disqualification of the United States Attorney's Office ("USAO") and Bureau of Land Management ("BLM") agents ("Motion").[2] The Wades argue they are entitled to relief because the government violated their Sixth Amendment right to counsel by obtaining a privileged attorney-client letter during the execution of a search warrant and later providing the letter to numerous parties involved in the investigation and in discovery.[3]

Because government obtained the Wades' privileged attorney-client letter before the Indictment's filing, the Wades' Sixth Amendment right to counsel is not implicated and was not violated. Prejudice to the Wades also may not be presumed under the circumstances and has not been established. The government did not intentionally or purposefully intrude on the Wades' attorney-client relationship and had a legitimate legal justification in executing the search warrant. No member of the prosecution team has accessed, searched for, or reviewed the Wades'

---

[1] Docket no. 1, filed Sept. 27, 2023

[2] Defendants Vint and Donna Wades' Amended Motion to Dismiss Indictment or, in the Alternative, Motion to Disqualify United States's Attorney's Office and BLM Agents ("Motion"), docket no. 118, filed Apr. 11, 2024.

[3] *Id*. at 7-16.

attorney-client letter, and the government's taint team has located and isolated or deleted all known copies of the letter made by the government. And the Wades fail to demonstrate any prejudice resulting from the government's obtaining and distributing the attorney-client letter. Additionally, the circumstances are such that neither the Indictment's dismissal nor the USAO and BLM agents' disqualification would be an appropriate remedy even if the Wades' Sixth Amendment right to counsel was violated. Therefore, the Wades' Motion[4] is DENIED.

**Contents**

BACKGROUND ............................................................................................................. 2
DISCUSSION .............................................................................................................. 12
    The Wades' Sixth Amendment right to counsel was not violated by the government ..... 12
    The Wades fail to demonstrate any prejudice to the attorney-client relationship or to the
        proceedings ........................................................................................... 15
        Prejudice may not be presumed under the circumstances .................................... 16
        The Wades fail to demonstrate any prejudice ..................................................... 19
    Neither dismissal nor disqualification are an appropriate remedy .................................. 20
ORDER ..................................................................................................................... 22

## BACKGROUND[5]

In September 2021, BLM Special Agent Jason Bulkley began an investigation regarding illegal paleontological resource collection.[6] Agent Bulkley reviewed case files on prior criminal investigations involving paleontological resources in the Canyon Country District near Moab,

---

[4] Docket no. 118, filed Apr. 11, 2024.

[5] The following Background is taken from the briefing on the Wades' Motion. The parties did not present evidence to support all their factual assertions. Nor did either party request an evidentiary hearing regarding the facts relevant to the Wades' Motion. In a footnote, the Wades suggest that a limited evidentiary hearing may be helpful to confirm the details of the marking, review, and dissemination of the privileged attorney-client letter that is the subject of their Motion. Motion at 2 n.1. However, the government has submitted undisputed evidence relating to these matters. Declaration of Jacob J. Strain ("Strain Decl."), docket no. 120-2, filed Apr. 24, 2024. The facts relevant and material to the Wades' Motion are not in dispute. Rather, the parties' characterizations of those facts and their legal effect are disputed. Therefore, an evidentiary hearing is unnecessary.

[6] United States' Opposition to Vint & Donna Wade's Amended Motion to Dismiss or, in the Alternative, to Disqualify the USAO and BLM Agents from Case ("Response") ¶ 1 at 2, docket no. 120, filed Apr. 24, 2024.

Utah as part of this investigation.[7] From this review, Agent Bulkley became aware of prior BLM investigations into Vint Wade and others regarding paleontological resource purchases, including an investigation that opened in April 2014.[8] The USAO also opened an investigation on June 11, 2014, into a third-party who is a known associate of Mr. Wade.[9]

The Wades were not named as lead targets in the USAO's 2014 investigation or any other subsequent investigations, except for the investigation stemming from Agent Bulkley's investigation that resulted in the Indictment in this case.[10] Nevertheless, the Wades' cell phones were seized and searched as part of the 2014 investigation.[11] On August 19, 2014, the Wades retained Tara Isaacson and Walter Bugden as counsel because of the 2014 investigation.[12] On August 27, 2014, Ms. Isaacson and Mr. Bugden communicated with Assistant United States Attorney ("AUSA") Andrew Choate, providing written notice that the Wades were represented by counsel.[13] Ms. Isaacson and Mr. Bugden also communicated confidential and attorney-client privileged information to the Wades in writing regarding the investigation in 2014.[14]

The AUSA assigned to the 2014 investigation was Scott Romney, who is no longer employed with the USAO.[15] AUSAs Ruth Hackford-Peer and Melina Shiraldi, who are part of the prosecution team in this case, were not employed at the USAO during the 2014

---

[7] *Id*. ¶ 2 at 2.

[8] *Id*.

[9] *Id*. ¶ 4 at 2-3 (USAO No. 2014R00413).

[10] *Id*. ¶ 4 at 2-3, n.1.

[11] Reply in Support of Amended Motion to Dismiss Indictment or, in the Alternative, Motion to Disqualify United States Attorney's Office and BLM Agents from Case ("Reply") ¶ 6 at 2, docket no. 123, filed May 1, 2024.

[12] Motion ¶ 4 at 2.

[13] *Id*. ¶ 8 at 3; Letter from Tara L. Isaacson and Walter F. Bugden to Andrew Choate dated Aug. 27, 2014, docket no. 123-1, filed May 1, 2024.

[14] Motion ¶ 9 at 2.

[15] Response ¶ 6 at 3.

investigation's pendency.[16] No charges were filed against the Wades as part of the 2014 investigation.[17] And the 2014 investigation was closed on August 24, 2016, with a "declination" designation, meaning that no federal charges were filed against the investigation's targets.[18]

From September 2016 through January 2022, the BLM received information from confidential informants regarding the Wades illegally purchasing and selling dinosaur bones.[19] In January 2022, Agent Bulkley formally opened a BLM investigation identifying Mr. Wade as a target.[20] On August 3, 2022, the USAO opened its investigation relating to this case, which identified Mr. Wade as a target.[21] Some of the witnesses identified in the 2014 investigation are identified as witnesses in this case.[22] The prosecution team for the investigation and this case includes Agent Bulkley; BLM Special Agent Peter Maggio; AUSA Hackford-Peer; AUSA Shiraldi; and paralegal Shannon Mattson.[23] No one on the prosecution team knew that Ms. Isaacson and Mr. Bugden represented the Wades regarding any prior investigations until December 2023.[24]

On January 10, 2023, federal agents executed a search warrant on Wades Wood & Rock.[25] During the warrant's execution, agents seized an Apple computer, among other items.[26] That same day, because the BLM does not have a trained or certified forensic examiner on staff,

---

[16] *Id.*

[17] Motion ¶ 10 at 3.

[18] Response ¶ 5 at 2.

[19] Reply ¶¶ 13-15 at 3-4.

[20] Response ¶ 3 at 2.

[21] *Id.* ¶ 9 at 3-4 (USAO No. 2022R00755).

[22] Motion ¶ 6 at 2.

[23] Response ¶ 8 at 3.

[24] *Id.*

[25] *Id.* ¶ 10 at 4; Motion ¶ 1 at 2.

[26] Motion ¶ 2 at 2; Response ¶ 10 at 4, ¶ 19 at 6.

the Wades' Apple computer was signed over to the Utah Trust Lands Administration via Utah Attorney General Special Agent Brent Kasza.[27] On January 17, 2023, Agent Kasza requested that the Apple computer be processed by the Regional Computer Forensics Laboratory ("RCFL").[28] The RCFL provides forensic services to law enforcement agencies in collecting and examining digital evidence.[29]

When the warrant was executed on Wades Wood & Rock, the Wades contacted Ms. Isaacson for legal assistance, but she was unavailable and referred them to Kyler Ovard.[30] Shortly thereafter, AUSAs Hackford-Peer and Shiraldi learned that the Wades were represented by counsel, Kyler Ovard and Gregory Ferbrache.[31] The USAO was not notified, at that time, that Ms. Isaacson represented the Wades regarding this investigation.[32]

On February 14, 2023, the USAO obtained a warrant for Mr. Wade's cell phone.[33] On February 16, 2023, AUSA Hackford-Peer sent an email to Mr. Ovard to arrange for Mr. Wade to surrender his cell phone pursuant to the warrant.[34] Mr. Ovard responded by email the same day, indicating he was "concerned about attorney/client text messages that are on the phone."[35] And

---

[27] Response ¶ 19 at 6. At the time the federal warrant was executed on Wade's Wood & Rock, the Utah Attorney General's Office also had a state criminal investigation open regarding the Wades for allegedly purchasing paleontological resources removed from Utah State Trust Lands. *Id.* at 6 n.8. Agent Bulkley worked closely with Agent Kasza on the respective investigations until February 2023. *Id*; Reply ¶ 15 at 4. On February 1, 2023, AUSAs Hackford-Peer and Shiraldi met with several representative of the Utah Attorney General's Office to discuss the possibility of conducting a joint investigation. Response at 6 n.8. But a decision was made in mid-February 2023 that the federal and state investigations would proceed separately. *Id.*

[28] Motion ¶ 13 at 3; Response ¶ 20 at 6; RCFL Report of Examination at 1, docket no. 118-1, filed Apr. 11, 2024.

[29] Response ¶ 20 at 6.

[30] Motion ¶ 11 at 3.

[31] *Id*. ¶ 12 at 3; Response at 4 n.3.

[32] Response at 4 n.3.

[33] *Id*. ¶ 11 at 4.

[34] *Id*. ¶ 12 at 4; Motion ¶ 14 at 3; Email Chain between Ruth Hackford-Peer and Kyler Ovard, docket no. 120-1, filed Apr. 24, 2024.

[35] Motion ¶ 15 at 4; Response ¶ 13 at 4; Email Chain between Ruth Hackford-Peer and Kyler Ovard.

he asked, "[c]an a taint team remove the test messages that Mr. Wade and I have exchanged?"[36]

AUSA Hackford-Peer replied by email the same day, stating:

> Thank you for raising attorney/client issues. What we will do is have a filter team go through the contents before the agent and I get the phone.
>
> Did you have a relationship with Mr. Wade prior to being retained, or can we just do a search of your name and remove everything between the two of you from the date you were retained and now?[37]

Mr. Ovard again responded by email stating that he did not have a prior attorney-client relationship with the Wades.[38] He also provided his cell phone number for the taint filter.[39]

At that time, the only notice the USAO received regarding potential attorney-client privileged materials within any of the devices and materials seized pursuant to the warrants was Mr. Ovard's concern with text messages between himself and Mr. Wade on Mr. Wade's cell phone.[40] No one notified the USAO that attorney-client privileged material from Ms. Isaacson and Mr. Bugden's 2014 representation of the Wades could be present on the Wades' Apple computer or Mr. Wade's cell phone.[41] And no one notified the USAO that Ms. Isaacson represented the Wades regarding this investigation.[42]

On February 21, 2023, Mr. Wade surrendered his cell phone to agents at the BLM office in Moab, Utah.[43] That same day, the USAO set up a taint team to screen materials from Mr.

---

[36] Motion ¶ 15 at 4; Response ¶ 13 at 4; Email Chain between Ruth Hackford-Peer and Kyler Ovard.

[37] Motion ¶ 16 at 4; Response ¶ 14 at 4-5; Email Chain between Ruth Hackford-Peer and Kyler Ovard.

[38] Response ¶ 15 at 5; Email Chain between Ruth Hackford-Peer and Kyler Ovard.

[39] Response ¶ 15 at 5; Email Chain between Ruth Hackford-Peer and Kyler Ovard.

[40] Response ¶ 16 at 5; Strain Decl. ¶ 5 at 1.

[41] Response ¶ 16 at 5.

[42] *Id*.

[43] Motion ¶ 17 at 4.

Wade's cell phone.[44] The USAO did not assign the taint team to perform a filter review of any other electronic devices seized from the Wades.[45] BLM Special Agent Brian Smith was designated as the taint team's filter agent to review Mr. Wade's cell phone and isolate any privileged communications from Mr. Ovard.[46] AUSA Jacob Strain was also designated to handle the filter review of Mr. Wade's cell phone.[47] AUSA Strain reviewed the potential attorney-client privileged communications on Mr. Wade's cell phone that were flagged and isolated by Agent Smith.[48]

The RCFL processed the Wades' Apple computer from February 23, 2023, through April 13, 2023, without utilizing a taint team.[49] An RCFL examiner processed the contents of the computer, tagging certain items contained on the 927.10 GB of data on the hard drive based on search terms that were provided to him (*e.g.*, "bones," "dinosaur").[50] The RCFL examiner tagged 33 "documents of interest;" one email account; 127 "emails of interest;" 209 "images of interest;" eight items of operating system information; and 10 items of user information.[51]

Near the end of March 2023, Agent Bulkley retrieved the Wades' Apple computer from Agent Kasza to return it to the Wades.[52] On April 5, 2023, Agent Bulkley sent Mr. Wade's cell phone and the Apple computer to the Wades' address in Moab, Utah, without further searching

---

[44] *Id*. ¶ 18 at 4.

[45] Response ¶ 18 at 5.

[46] *Id*. ¶ 17 at 5; Strain Decl. ¶3 at 1.

[47] Response ¶ 18 at 5; Strain Decl. ¶ 2 at 1.

[48] Response ¶ 18 at 5; Motion ¶ 18 at 4; Strain Decl. ¶ 4 at 1, ¶ 8 at 2.

[49] Motion ¶ 19 at 4; Reply ¶ 20 at 4; RCFL Report of Examination at 2; RCFL Notes, docket no. 118-2, filed Apr. 11, 2024; Strain Decl. ¶ 21 at 5.

[50] Response ¶ 32 at 9; Strain Decl. ¶ 26 at 6-7.

[51] Report of Examination at 2; RCFL Notes.

[52] Response ¶ 21 at 6.

the Apple computer.[53] A few weeks later, Agent Kasza provide Agent Bulkley with an electronic storage device that contained the full "image" of the Apple computer, and a CD containing the scoping and flagging the RCFL conducted on the computer's contents.[54] Agent Kasza informed Agent Bulkley that the Apple computer was largely duplicative of evidence already obtained and did not yield anything of new evidentiary value.[55] Agent Bulkley placed the electronic storage device and the CD provided by Agent Kasza in an evidence locker without reviewing them.[56]

On September 27, 2023, the Indictment was filed in this case against the Wades, Steven Willing, and Jordan Willing.[57] In preparing for the Indictment, Agent Bulkley took out the CD provided by Agent Kasza, copied it to a hard drive without reviewing it, and provided the hard drive to the USAO for Ms. Mattson to process it as part of discovery.[58] On October 20, 2023, Ms. Mattson processed the discovery natively, without Bates stamps and without reviewing any of the materials.[59] The native contents were not imported into the USAO's electronic discovery management system.[60] Ms. Mattson also made a copy of the hard drive for the USAO and maintained the copy without further review.[61] The hard drive that Agent Bulkley provided to the USAO was then returned to him, and he placed it in an evidence locker without further review.[62] The hard drive remained in the evidence locker until January 2024.[63]

---

[53] *Id.*

[54] *Id.* ¶ 22 at 6-7.

[55] *Id.*

[56] *Id.* ¶ 23 at 7.

[57] Motion ¶ 20 at 4; Indictment.

[58] Response ¶ 24 at 7.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

On October 20, 2023, Ms. Isaacson entered an appearance as counsel for Mr. Wade in this case.[64] This was the prosecution team's first notice that Ms. Isaacson represented Mr. Wade in this case.[65] Also on October 20, 2023, the government provided discovery to counsel for the Wades and their co-defendants, which included materials from the Wades' Apple computer.[66]

In December 2023, counsel for Jordan Willing found an attorney-client letter from Ms. Isaacson and Mr. Bugden to the Wades while reviewing the discovery provided by the government.[67] Mr. Willing's counsel immediately notified Ms. Isaacson.[68] The letter was within the materials the government obtained from Wades' Apple computer, and was part of 33 documents on the computer that were marked as "documents of interest" by the RCFL examiner.[69] The letter was written in August 2014, is two pages in length, and is on Ms. Isaacson and Mr. Bugden's firm letterhead.[70] The letter relates to the 2014 investigation and contains confidential and attorney-client privileged information communicated to the Wades.[71] This information directly bears on the allegations and a witness involved in this case.[72]

On December 22, 2023, Ms. Isaacson notified AUSA Hackford-Peer that the 2014 attorney-client letter was found in the discovery the government had produced.[73] AUSA

---

[64] *Id*. ¶ 25 at 7-8; Motion ¶ 21 at 4; Appearance of Counsel, docket no. 52, filed Oct. 20, 2023.

[65] Response ¶ 25 at 7-8.

[66] Motion ¶ 22 at 4, ¶ 26 at 5; First Notice of Compliance and Request for Reciprocal Discovery, docket no. 43, filed Oct. 20, 2023.

[67] Motion ¶ 23 at 4.

[68] *Id*.

[69] *Id*. ¶ 27 at 5, ¶ 31 at 6; Response ¶ 32 at 9; Reply ¶ 21 at 4.

[70] Motion ¶ 24 at 5.

[71] *Id*. ¶ 25 at 5.

[72] *Id*.; Reply ¶ 22 at 5. The 2014 letter was not submitted with the briefing on the Wades' Motion to avoid exposing additional parties to the attorney-client privileged information. Motion at 5 n.8.

[73] Response ¶ 26 at 8.

Hackford-Peer referred Ms. Isaacson to AUSA Strain because he was designated for the taint

team of Mr. Wade's cell phone.[74] On December 26, 2023, Ms. Isaacson emailed AUSA Strain

regarding the 2014 attorney-client letter.[75] AUSA Strain searched for the letter in the USAO's

electronic discovery management system, but could not find the letter because it had not been

uploaded to the system.[76] AUSA Strain determined that the letter was contained in the 927.10

GB of data on the hard drive of the Apple computer.[77] The computer and the RCFL results that

were produced in discovery had not been accessed by the prosecution team.[78]

AUSA Strain responded to Ms. Isaacson by email on January 9, 2024, indicating his

belief that the 2014 letter must have been from "a raw, unsearched, unscoped full device or

search warrant return" and that "the prosecution team made those items available to defense

counsel."[79] On January 10, 2024, AUSA Strain also identified eight copies of the data image

from the Apple computer (which included the 2014 letter) that the government had made and

distributed:

- one copy was in a BLM evidence locker in St. George, Utah;

- one copy was in the possession of Agent Bulkley;

- one copy was made by Ms. Mattson and maintained at the USAO;

- one copy was made and provided to defense counsel for the Wades and their co-defendants (four copies in total); and

- one copy was in the possession of Agent Kasza.[80]

---

[74] *Id.*

[75] Motion ¶ 29 at 5; Strain Decl. ¶ 10 at 2.

[76] Response ¶ 28 at 8; Strain Decl. ¶ 15 at 3-4, ¶ 17 at 4.

[77] Response ¶ 28 at 8; Report of Examination at 2; RCFL Notes.

[78] Response ¶ 28 at 8.

[79] Motion ¶ 30 at 5; Strain Decl. ¶ 18 at 3.

[80] Motion ¶ 33 at 6, ¶ 40 at 7; Response ¶ 28 at 8; Reply ¶ 23 at 5; Strain Dec. ¶¶ 19-20.a. at 4.

AUSA Strain then located and ensured that each of the eight copies of the 2014 attorney-client letter were deleted or isolated.[81] On January 11, 2024, Agent Bulkley met with Agent Smith at the BLM office in St. George, Utah.[82] Agent Smith deleted the 2014 attorney-client letter off the drive possessed by Agent Bulkley.[83] Agent Smith also took possession of the electronic storage device and the CD originally provided by Agent Kasza and Agent Smith continues to be the only person with access to those devices.[84]

Ms. Mattson provided AUSA Strain with the copy of the hard drive maintained at the USAO.[85] On January 18, 2024, AUSA Strain confirmed that he deleted the copy of the 2014 attorney-client letter from the hard drive maintained at the USAO.[86] AUSA Strain also contacted counsel for the Wades' co-defendants and instructed them to delete the 2014 attorney-client letter from the discovery the government had provided.[87] AUSA Strain later received confirmation from defense counsel that the letter was deleted.[88]

AUSA Strain also contacted the RCFL and confirmed that the RCFL did not have a copy of the Apple computer's hard drive or the 2014 attorney-client letter.[89] He also confirmed that the letter was tagged as a "document of interest" by the RCFL examiner based on the search terms that were provided to him (*e.g.*, "bones," "dinosaur").[90] The RCFL examiner who tagged

---

[81] Motion ¶¶ 35-40 at 6-7; Response ¶¶ 29-36 at 8-10; Reply ¶¶ 24, 27 at 5; Strain Decl. ¶¶ 22-36 at 5-10.

[82] Motion ¶ 36 at 6; Response ¶ 29 at 8.

[83] Motion ¶ 36 at 6; Response ¶ 29 at 8; Strain Decl. ¶ 23 at 5.

[84] Motion ¶ 35 at 6; Response ¶ 29 at 8; Strain Decl. ¶ 26 at 6-7.

[85] Motion ¶ 37 at 6; Response ¶ 30 at 8; Strain Decl. ¶ 22 at 5.

[86] Motion ¶ 37 at 6; Response ¶ 30 at 8; Strain Decl. ¶ 22 at 5.

[87] Response ¶ 31 at 8-9; Strain Decl. ¶ 24 at 5.

[88] Response ¶ 31 at 8-9; Strain Decl. ¶ 25 at 6.

[89] Motion at ¶¶ 38-39 at 7; Response ¶ 32 at 9; Strain Decl. ¶ 26 at 6-7.

[90] Response ¶ 32 at 9; Strain Decl. ¶ 26 at 6-7. AUSA Strain initially incorrectly informed Ms. Isaacson that the 2014 letter would have been marked as a "document of interest" by one of two BLM agents. Motion ¶ 32 at 6; Strain

the letter did not recall reviewing it but, nevertheless, was placed on the taint team and instructed to not provide any assistance to the prosecution team.[91]

In January and February 2024, AUSA Strain contacted Agent Kasza to determine whether he had a copy of the Wades' Apple computer.[92] Agent Kasza searched his materials but could not locate a copy of the computer's contents at that time.[93] AUSA Strain instructed Agent Kasza to contact him if he found a copy of the computer and to not search the materials.[94] On April 17, 2024, Agent Kasza spoke with AUSAs Hackford-Peer and Strain and indicated that he located his copy of the Wades' Apple computer and the RCFL analysis.[95] AUSA Strain directed Agent Kasza to delete the entire electronic database without reviewing it, and Agent Kasza confirmed doing so on April 18, 2024.[96]

At no time did any member of the prosecution team (AUSAs Hackford-Peer and Shiraldi, Ms. Mattson, and Agents Bulkley and Maggio) access, search for, or review the 2014 attorney-client letter, or access or review any other privileged communications of the Wades.[97]

## DISCUSSION

### The Wades' Sixth Amendment right to counsel was not violated by the government

The Wades seek dismissal of the Indictment against them or, alternatively, disqualification of the USAO and BLM agents for obtaining and distributing their privileged

---

Decl. ¶ 19 at 3-4. AUSA Strain later corrected this inaccuracy when corresponding with Ms. Isaacson. Motion ¶ 38 at 6; Strain Decl. ¶ 20.c. at 4-5, ¶ 26 at 6-7.

[91] Response ¶ 32 at 9; Strain Decl. ¶ 26 at 6-7.

[92] Response ¶ 33 at 9; Strain Decl. ¶¶ 26-32 at 6-8.

[93] Response ¶ 33 at 9; Motion ¶ 40 at 7; Reply ¶ 24 at 5; Strain Decl. ¶ 31 at 8.

[94] Response ¶ 33 at 9; Strain Decl. ¶ 31 at 8.

[95] Response ¶ 34 at 9; Reply ¶ 27 at 5; Strain Decl. ¶ 33 at 9.

[96] Response ¶ 34 at 9; Reply ¶ 27 at 5; Strain Decl. ¶¶ 33-34 at 9.

[97] Response ¶¶ 35-36 at 9-10.

2014 attorney-client letter in violation of the Sixth Amendment.[98] "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."[99] "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[100] The government's intrusion into the attorney-client privilege can, under some circumstances, violate a criminal defendant's Sixth Amendment right to counsel.[101] The Sixth Amendment right to counsel is "a right, fundamental to our system of justice . . . meant to assure fairness in the adversary criminal process."[102] Nevertheless, not all government intrusions into the attorney-client privilege implicate the Sixth Amendment.

"[I]t has been firmly established that a person's Sixth Amendment . . . right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against [them] . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."[103]

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds [themselves] faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.[104]

---

[98] Motion at 7-16.

[99] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[100] *Id.*

[101] *Shillinger v. Haworth*, 70 F.3d 1132, 1138 (10th Cir. 1995) (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977)).

[102] *United States v. Morrison*, 449 U.S. 361, 364 (1981).

[103] *Kirby v. Illinois*, 406 U.S. 682, 688-689 (1972).

[104] *Id.* at 689-690.

Thus, "[g]overnment intrusions into pre-indictment attorney-client relationships do not implicate the Sixth Amendment."[105] And privileged attorney-client communications obtained by the government prior to an indictment do not constitute a Sixth Amendment violation even after an indictment is filed.[106]

The government obtained the Wades' Apple computer that contained the privileged 2014 attorney-client letter on January 10, 2023, through the execution of a warrant on Wades Wood & Rock. The forensic processing performed on the computer by RCFL, which gave the government access to the contents of the computer, was competed from February 23, 2023, through April 13, 2023. And the Indictment against the Wades was not filed until over five months later, on September 27, 2023.

Because the Indictment against the Wades was not filed when the government obtained the 2014 attorney-client letter, the Wades' Sixth Amendment right to counsel is not implicated. The Wades make much of the fact that they were investigated in 2014; that the USAO had notice of their representation by counsel in 2014; and that the BLM continued receiving information from confidential sources regarding the Wades from September 2016 through January 2022.[107] The Wades argue that these facts demonstrate that the investigation into them was ongoing from 2014.[108] The Wades are incorrect.

The Wades' own briefing acknowledges that no charges were filed against them from the 2014 investigation.[109] The 2014 investigation was closed in August 2016, with no charges being

---

[105] *United States v. Kennedy*, 225 F.3d 1187, 1194 (10th Cir. 2000).

[106] *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1117 (10th Cir. 1998).

[107] Motion at 10-13; Reply at 6-9.

[108] Motion at 10-13; Reply at 6-9.

[109] Motion ¶ 10 at 3.

filed against any of the investigation's targets. That the BLM continued receiving information regarding the Wades after the 2014 investigation was closed does not mean that the investigation was ongoing. Rather, the subsequent information demonstrates the Wades' ongoing alleged illegal activities that support Agent Bulkley's initiation of a formal investigation into the Wades in January 2022, and the USAO's initiation of its investigation on August 3, 2022.

But whether the investigation into the Wades was ongoing from 2014 has no consequence to the Wades' asserted Sixth Amendment violation. The Wades' Sixth Amendment right to counsel did not attach at the initiation of an investigation into them. The right attached at the filing of the Indictment against them on September 27, 2023.[110] Therefore, the Wades' Sixth Amendment right to counsel is not implicated by the government's pre-indictment obtaining of the 2014 attorney-client letter.[111] The government did not violate the Wades' Sixth Amendment right to counsel.

**The Wades fail to demonstrate any prejudice to
the attorney-client relationship or to the proceedings**

Even if the government's obtaining and distributing the Wades' 2014 attorney-client letter implicated the Sixth Amendment, the intrusion alone is not sufficient to demonstrate a Sixth Amendment violation. "[T]he 'benchmark' of a Sixth Amendment claim is 'the fairness of the adversary proceeding.'"[112] "[S]tanding alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right."[113] "A violation of the attorney-client privilege implicates the Sixth Amendment *only . . . when* the government interferes with the

---

[110] *Kirby*, 406 U.S. at 688-689.

[111] *Kennedy*, 225 F.3d at 1194; *Lin Lyn Trading, Ltd.*, 149 F.3d at 1117.

[112] *Shillinger*, 70 F.3d at 1141 (quoting *Nix v. Whiteside*, 475 U.S. 157, 175 (1986)).

[113] *Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) (quoting *Partington v. Gedan*, 961 F.2d 852, 863 (9th Cir. 1992)).

relationship between a criminal defendant and [their] attorney."[114] And "absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."[115] Thus, to establish a Sixth Amendment violation based on intrusion into the attorney-client relationship, there must be prejudice,[116] which is either presumed based on the circumstances or demonstrated through a showing an actual or realistic possibility of injury.[117]

**Prejudice may not be presumed under the circumstances**

"[I]n certain Sixth Amendment contexts, prejudice is presumed."[118] However, "[a] Sixth Amendment per se rule of prejudice is a blunt legal instrument."[119] And "[t]he Supreme Court has cautioned against sweeping Sixth Amendment rules that 'cut much too broadly.'"[120] Only "when the [government] becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed."[121] This is because "(1) the inherent harmful effect of such intrusions on adversarial proceedings, especially the trial; and (2) the need to deter government misconduct."[122]

Thus, the presumption applies to "[government]-created procedure to impair the accused's enjoyment of the Sixth Amendment guarantee by disabling [the accused's] counsel

---

[114] *Shillinger*, 70 F.3d at 1141 (quoting *Partington*, 961 F.2d at 863) (emphasis in original).

[115] *Id*. (quoting *United States v. Chronic*, 466 U.S. 648, 658 (1984)).

[116] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1267 (10th Cir. 2023).

[117] *Shillinger*, 70 F.3d at 1141-1142.

[118] *Id*. at 1141 (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

[119] *Orduno-Ramirez*, 61 F.4th at 1273.

[120] *Id*. (quoting *Weatherford*, 429 U.S. at 557).

[121] *Shillinger*, 70 F.3d at 1142.

[122] *Orduno-Ramirez*, 61 F.4th at 1269.

from fully assisting and representing [the accused]."[123] "These intrusions inherently harm the reliability of the trial process, meaning prejudice in these circumstances is no likely that case-by-case inquiry about prejudice is unnecessary."[124] And "no other standard than a per se rule can adequately deter this sort of [government] misconduct."[125] "This presumption [of prejudice] is conclusive—the court must accept that the defendant suffered prejudice even if the government presents evidence to the contrary."[126]

The government obtaining and distributing the Wades' 2014 attorney-client letter is not a circumstance where prejudice may be presumed. There are no facts suggesting the government intentionally or purposefully intruded on the Wades' attorney-client relationship. There are no facts suggesting the government's purpose in obtaining the Wades' apple computer was to intrude upon or impair the Wades' counsel from fully assisting and representing them. And there are no facts suggesting the government had notice that any privileged attorney-client materials were contained in the Wades' Apple computer. The only notice the government received regarding potential privileged attorney-client materials related to text messages between Mr. Wade and Mr. Ovard contained on Mr. Wade's cell phone. And the government appropriately established a taint team to filter those privileged materials from the cell phone.

The facts demonstrate that by no stretch could it be reasonable for the government to have known or believed that the Wades' Apple computer contained a near decade old attorney-client letter involving a prior investigation into similar allegations. The government certainly had notice in August 2014 that the Wades were represented by Ms. Isaacson and Mr.

---

[123] *Id.* (internal quotations and punctuation omitted).

[124] *Id.* at 1270 (internal quotations and punctuation omitted).

[125] *Id.* (internal quotations and punctuation omitted).

[126] *Id.* at 1269.

Bugden in relation to a 2014 investigation. But that investigation closed in August 2016 with no charges being filed against the Wades, or other targets of the investigation.

The government had no notice that Ms. Isaacson was representing Mr. Wade approximately nine years later when it obtained the Wades' Apple computer; when the RCFL processed the computer; or when the government made and distributed copies of the computer's contents. Ms. Isaacson did not enter an appearance as counsel for Mr. Wade until October 20, 2023, several months after the Apple computer was obtained by the government and processed by the RCFL; nearly one month after the Indictment's filing; and on the same day the government produced the discovery that contained the 2014 attorney-client letter.

Based on AUSA Hackford-Peer's February 2023 email communications with Mr. Ovard, the government had no reason to believe that privileged attorney-client materials would be contained within any of the items seized from the Wades, other than Mr. Wade's cell phone. The RCFL examiner tagged the 2014 attorney-client letter as a "document of interest." But this was based on generic search terms (*e.g.*, "bones," "dinosaur"), and the examiner does not recall reviewing the letter. And there are no facts suggesting that anyone on the prosecution team reviewed the letter. Indeed, the discovery produced by the government was in native form, without Bates stamps and without being reviewed by the prosecution team or imported into the government's electronic discovery management system.

The facts demonstrate that the government intentionally and purposefully obtained the Wades' Apple computer. But they do not demonstrate that the government intentionally or purposefully intruded into the Wades' attorney-client relationship. The government's knowledge of the Wades' representation by counsel in 2014 and that the Wades' Apple computer happened to contain the 2014 attorney-client letter when it was obtained by the government approximately

nine years later as part of a separate investigation are not sufficient to demonstrate an intentional or purposeful intrusion into the Wades' attorney-client relationship.

Additionally, the government obtained the Wades' Apple computer pursuant to a warrant. And the Wades have not challenged the propriety of that warrant. Therefore, the government had a legitimate legal justification for obtaining the Apple computer and having it processed by the RCFL as part of its investigation that led to the Indictment against the Wades.

This is not a situation where the government's purpose was to learn what it could about the Wades' defense plans by obtaining the Apple computer without legitimate legal justification. The circumstances surrounding the government's obtaining and distributing the Wades' 2014 attorney-client letter are not such that prejudice may be presumed.

**The Wades fail to demonstrate any prejudice**

When prejudice is not presumed by a government intrusion into the attorney-client relationship, "proof a 'realistic possibility of injury to [the defendant] or benefit to the [government]' [is required] in order to constitute a violation of a defendant's Sixth Amendment rights."[127] The Wades make no effort to demonstrate actual prejudice or a realistic possibility of prejudice to their attorney-client relationship or the proceedings by the government obtaining and distributing the 2014 attorney-client letter.

The facts demonstrate that no one on the prosecution team has accessed, searched for, or reviewed the Wades' 2014 attorney-client letter. But even if they had, there are no facts suggesting that the government's (or the co-defendants') knowledge of the letter's contents would have any effect on the Wades' attorney-client relationship or their defense in this case. The 2014 attorney-client letter pertains to the 2014 investigation and contains information that

---

[127] *Shillinger*, 70 F.3d at 1142 (quoting *Weatherford*, 429 U.S. at 558).

directly bears on the allegations and a witness involved in this case. But the Wades offer no explanation of how the disclosure of this privileged information in any way affects their ability to fully communicate with counsel; interferes with their defensive plans and strategy; or impugns a fair trial. Nor do the Wades offer any explanation of how the government (or their co-defendants) would benefit from knowledge of the letter's contents. The Wades do not even vaguely suggest how there is a realistic possibility of injury.

Rather, the Wades rely only on the fact that the letter contains privileged attorney-client information regarding this case to argue, in conclusory fashion, that a realistic possibility of injury exists.[128] Such argument—that the intrusion into the attorney-client privilege, alone, is sufficient—ignores the prejudice requirement of establishing a Sixth Amendment violation. Therefore, the Wades fail to establish any prejudice to their attorney-client relationship or the proceedings by the government's obtaining and distributing the 2014 attorney-client letter. The government did not violate the Wades' Sixth Amendment right to counsel.

**Neither dismissal nor disqualification are an appropriate remedy**

Finally, even if the Wades could demonstrate a violation of their Sixth Amendment right to counsel, neither dismissal of the Indictment nor disqualification of the USAO and BLM agents is an appropriate remedy. "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[129] "The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."[130] The Supreme Court's "approach has thus been to identify and then neutralize the taint by tailoring

---

[128] Motion at 13-14; Reply at 13.

[129] *Morrison*, 449 U.S. at 364.

[130] *Id*. at 365.

relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial."[131]

"Because it is a drastic step, dismissal of the indictment is a disfavored remedy"[132] that is appropriate only "in extreme circumstances."[133] Indeed, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate."[134] "[T]he remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted."[135] And if the "intrusion could so pervasively taint the entire proceeding" the appropriate remedy may be to "require retrial by a new prosecutor."[136] But "certain violations of the [Sixth Amendment] right to counsel may be disregarded as harmless error."[137] "[A]bsent some prejudicial effect on the defendant's proceeding 'there is no basis for imposing a remedy in that proceeding.'"[138]

The facts demonstrate that Wades' 2014 attorney-client letter was not uploaded to the USAO's electronic discovery management system. No one on the prosecution team has accessed, searched for, or reviewed the 2014 attorney-client letter. The RCFL examiner who tagged the letter as a "document of interest" did not recall reviewing the letter, but was still placed on the USAO's taint team and instructed to not provide any assistance to the prosecution team. The

---

[131] *Id.*

[132] *United States v. Kingston*, 971 F.2d 481, 491 (10th Cir. 1992).

[133] *Shillinger*, 70 F.3d at 1143.

[134] *Morrison*, 449 U.S. at 365.

[135] *Id.*

[136] *Shillinger*, 70 F.3d at 1143.

[137] *Morrison*, 449 U.S. at 365.

[138] *Shillinger*, 70 F.3d at 1143 (quoting *Morrison*, 449 U.S. at 365).

taint team also neutralized any taint by identifying, locating, and having deleted or isolated all known copies of the 2014 attorney-client letter that the government made and distributed. And the existence of the taint team (now with notice of the potential for privileged attorney-client materials from Ms. Isaacson and Mr. Bugden's prior representation of the Wades) protects against future intrusions into the Wades' attorney-client privilege.

These circumstances do not warrant dismissal of the Indictment against the Wades. Nor do they warrant disqualification of the USAO and BLM agents. The Wades' speculation that additional copies of the 2014 attorney-client letter may still exist or be in the possession of Agent Kasza is not sufficient to warrant any remedy in this case.[139] Because no prejudicial effect on the Wades' attorney-client relationship or the proceedings exists, any violation of the Wades' Sixth Amendment right to counsel that may have occurred is disregarded as harmless error.[140]

## ORDER

IT IS HEREBY ORDERED that the Wades' Motion[141] is DENIED.

Signed June 14, 2024.

BY THE COURT

David Nuffer
United States District Judge

---

[139] Reply at 11-12.

[140] *Morrison*, 449 U.S. at 365; *Shillinger*, 70 F.3d at 1143.

[141] Docket no. 118, filed Apr. 11, 2024.